INECON AGRICORPORATION, a California Corporation, Plaintiff-Appellee,

v.

TRIBAL FARMS, INC., an Arizona Corporation, Defendant-Appellant,

and

Fort Mojave Indian Tribe, etc., et al., Defendants.

No. 79–3617.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1981.

Decided Sept. 14, 1981.

Robert W. Warden, Mangum, Wall, Stoops & Warden, Flagstaff, Ariz., for defendant-appellant.

William S. Hawgood, II, Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for plaintiff-appellee.

Before GOODWIN, SCHROEDER and FARRIS, Circuit Judges.

GOODWIN, Circuit Judge.

Tribal Farms, Inc. appeals from a judgment of the district court enforcing a $169,-982.87 contractual arbitration award in favor of Inecon Agricorporation. Tribal Farms contends that (1) the district court lacked subject matter jurisdiction because complete diversity of citizenship did not exist between the parties, and (2) the underlying contracts between Inecon and Tribal Farms were void *ab initio* because they were not approved by the Secretary of the Interior and Commissioner of Indian Affairs as required by 25 U.S.C. §§ 81 and 84. We affirm.

On August 13, 1975, Inecon Agricorporation and the Fort Mojave Indian Tribe executed agricultural land development and management contracts. The contracts received the "Conditional Approval" of the Assistant Area Director of the Bureau of Indian Affairs on November 8, 1975. The parties subsequently complied with all conditions. In 1975, the Tribe created Tribal Farms, Inc., an Arizona corporation, in order to secure private investment capital from lenders who would not provide financing unless the borrower was subject to federal and state court jurisdiction. In March 1976, the Tribe assigned all its rights and duties under the development and management contracts to Tribal Farms. The Assistant Area Director approved the assignment on October 25, 1976. On May 18, 1977, following a series of disagreements, Inecon, Tribal Farms, and the Tribe executed a "reinstatement agreement" renew-

ing the obligations of all parties and providing for arbitration of disputes. The Bureau of Indian Affairs did not officially approve the reinstatement agreement; however, the Acting Deputy Commissioner of Indian Affairs expressed his satisfaction with the agreement in a letter dated June 14, 1977.

Another dispute arose between Inecon and Tribal Farms, and Inecon invoked the arbitration clause of the Reinstatement Agreement. On March 8, 1978, the arbitrator awarded Inecon $169,982.87 for amounts due under the development contract plus attorney fees. On June 2, 1978, Inecon filed its first amended complaint against Tribal Farms, Inc., the Fort Mojave Indian Tribe, the individual members of the Fort Mojave Tribal Council, and the Superintendent of the Colorado River Agency. On September 18, 1979, the district court entered a judgment for Inecon on its first cause of action, enforcing the arbitration award against Tribal Farms, Inc.

I. *Subject Matter Jurisdiction.*

■ Tribal Farms contends that the district court lacked subject matter jurisdiction because complete diversity of citizenship did not exist between the parties. A plaintiff may not invoke the jurisdiction of the federal courts under 28 U.S.C. § 1332 unless each defendant is a citizen of a different state from each plaintiff. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). Plaintiff Inecon Agricorporation is a California corporation. Defendants Llewellyn Barrackman and Norvin McCord, sued in their official capacities as members of the Fort Mojave Tribal Council, are residents of Needles, California. All other defendants are residents of Arizona. Tribal Farms concludes that because, Inecon, Barrackman and McCord are residents of California, the action must be dismissed for want of subject matter jurisdiction. Subject matter jurisdiction may be challenged for the first time on appeal. *M.C. & L.M. Railway Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884).

Before we can direct the dismissal of this action because of incomplete diversity of citizenship, however, we must determine whether Barrackman and McCord are non-indispensable parties under Fed.R.Civ.P. 19(b) who can be dismissed from the action pursuant to Rule 21 to perfect subject matter jurisdiction. *Anrig v. Ringsby United*, 603 F.2d 1319, 1325–26 (9th Cir. 1978); *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980). Under Rule 19(b), status as an indispensable party depends on:

"(1) the extent a judgment rendered in a person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder...." *Anrig, supra*, 603 F.2d at 1325–26.

■ We hold that Barrackman and McCord are not indispensable parties. Barrackman's and McCord's interests would not be prejudiced by their dismissal because the district court found only Tribal Farms liable to pay the arbitration award. Inecon would not be prejudiced because the judgment applies only to Tribal Farms, Inc., and Inecon is willing to accept dismissal to perfect subject matter jurisdiction. Inecon brought this problem upon itself by joining nondiverse defendants, but it would be a waste of time to bring another action against Tribal Farms in state or federal court. Accordingly, upon remand the district court will dismiss McCord and Barrackman from this action. We now turn to the merits.

II. *Contractual Validity and 25 U.S.C. §§ 81 and 84.*

Tribal Farms contends that the district court erred by enforcing the arbitration award, because the development contract, assignment, and reinstatement agreement were not approved by the proper government officials as required by 25 U.S.C. §§ 81 and 84 and thus are void *ab initio*.

25 U.S.C. § 81 provides in pertinent part:

"No agreement shall be made by any person with any tribe of Indians, or indi-

vidual Indians not citizens of the United States . . . unless such contract or agreement . . .

.     .     .     .     .

" . . . shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it.

.     .     .     .     .

"All contracts or agreements made in violation of this section shall be null and void. . . ."

25 U.S.C. § 84 provides:

"No assignment of any contract embraced by section 81 of this title or of any part of one shall be valid, unless the names of the assignees and their residences and occupations be entered in writing upon the contract, and the consent of the Secretary of the Interior and the Commissioner of Indian Affairs to such assignment be also indorsed thereon."

The development contract was approved by the Assistant Area Director on a separate page attached to the contract and the assignment was approved by the Assistant Area Director by a separate page attached to the contract. The reinstatement agreement was never formally approved by Department of the Interior or Bureau of Indian Affairs officials. Tribal Farms contends that all these agreements are void because (1) 25 U.S.C. § 81 requires actual, not conditional, approval of Indian contracts, and (2) an "indorsed" approval must appear on the face of the contract, not on a separate page. This argument is not persuasive.

Title 25 U.S.C. § 81 does not apply to the reinstatement agreement as between Tribal Farms and Inecon. Tribal Farms is an Arizona corporation and thus does not fall within the protected class of "tribe of Indians or individual Indians" covered by the statute.

Tribal Farms' contention that the reinstatement agreement is void for want of mutuality of obligation because the Fort Mojave Tribe, a party to the contract, lacked capacity to contract without government approval is without merit. Assuming, *arguendo*, that the reinstatement agreement cannot be enforced against the Tribe because the contract was not approved as required by 25 U.S.C. § 81, the contractual incapacity of the Tribe does not render the agreement unenforceable as between Inecon and Tribal Farms. Mutuality of contractual obligation is not destroyed by a defense of incapacity claimed by one of several multiple parties. *See* Ariz.Rev.Stat. § 44–141 (1967). *See also, Restatement of Contracts*, § 119(2)(b); 2 *Williston on Contracts*, § 327 at 672 (3d ed. 1959); 4 *Corbin on Contracts*, § 929 at 722–23 (1951).

The reinstatement agreement, which in effect incorporated by reference the development and management contracts of August 1975, and the assignment to Tribal Farms of March 1976, re-established the business relationship between Inecon and Tribal Farms. The Tribe's sole interest in the contract is its pledge "not to interfere, hinder, or otherwise obstruct Inecon, its officers, agents or employees in its performance of its contract duties or receipt of its contract rights." In light of the Tribe's limited role under the reinstatement agreement, and the close relationship between the Tribe and Tribal Farms—the members of the Fort Mojave Tribal Council also serve as the directors of Tribal Farms—we hold that the reinstatement agreement is enforceable as between Tribal Farms and Inecon.[1]

The judgment of the district court is affirmed as to Tribal Farms, Inc. The cause is remanded to the district court with direction to dismiss the action as to Llewellyn Barrackman and Norvin McCord.

---

1. Because we find that the arbitrator's award is enforceable under the reinstatement agreement, we need not address Tribal Farms' contention that the development and management contracts and the assignment agreement are void *ab initio* for want of proper approval as required by 25 U.S.C. § 81.