Argued and submitted December 5, 1983, reversed March 27, petition for rehearing
denied May 1, 1984

# MOUNTAIN FIR LUMBER CO., INC.,
*Respondent on Review,*

*v.*

# EMPLOYEE BENEFITS INSURANCE CO.,
*Petitioner on Review.*

(TC A8005-02910, CA A22281, SC 29950)

679 P2d 296

James N. Westwood, Portland argued the cause and filed the brief for petitioner. With him on the brief was Miller,

Nash, Yerke, Wiener & Hagar, Frederic A. Yerke, and Bruce A. Rubin, Portland.

G. Kenneth Shiroishi, Portland, argued the cause and filed the briefs for respondent. With him on the briefs was Morrison, Dunn, Miller, Carney & Allen, Portland.

Before Peterson, C. J., Lent, Linde, Campbell and Carson, Justices.

CAMPBELL, J.

## CAMPBELL, J.

Plaintiff Mountain Fir entered into a contract with defendant Employee Benefits Insurance Co. for workers' compensation insurance coverage which plaintiff alleges included defendant's oral promise for the rebates of premiums. Defendant refused to pay these rebates and plaintiff filed two amended complaints. In the first it sought to recover damages, alleging damages for breach of contract and two fraud claims. In the second it asked for reformation and damages for breach of the reformed contract. Defendant argues that neither amended complaint stated facts sufficient for valid claims of relief because the alleged contract was in violation of statute and, therefore, unenforceable. The trial court agreed and granted judgment for defendant. The Court of Appeals reversed. *Mountain Fir Lbr Co. v. EBI Co.*, 64 Or App 312, 667 P2d 567 (1983). We reverse the Court of Appeals.

The parties entered into a three year contract for workers' compensation insurance in October of 1975. In addition to the written contract, plaintiff alleges an oral agreement that defendant would rebate some money, that is, return part of the premium to plaintiff in some circumstances.[1] Plaintiff alleges that defendant breached this part of the contract by failing to pay these rebates, and further alleges that it only entered into this contract because of defendant's fraudulent misrepresentations.

In response defendant filed an ORCP 21 motion to strike or dismiss the complaint[2] because the contract was

---

[1] Plaintiff alleges this oral agreement was as follows:

"1. That the cost to plaintiff for the described insurance coverage would be based upon a premium determined as the sum of:

"a. 20.7% of the Standard Premium

"b. Claims paid plus a reserve for open claims, multiplied by a Loss Conversion Factor of 1.10.

"2. That any amount of premium paid by plaintiff to defendant in excess of the above determined earned premium would be returned to plaintiff.

"3. That defendant would return amounts paid by plaintiff in excess of the earned premium one (1) year after the specific policy year, and a final computation and return would occur one (1) year after the expiration of the three year policy period."

[2] ORCP 21 states in part:

"A. How presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a complaint, counterclaim, cross-claim or third party claim,

illegal and should not be enforced, and the fraud action cannot stand because one may not rely on an illegal promise. The trial court granted defendant's motion to dismiss, holding that plaintiff failed to state facts sufficient for valid claims of relief.

Plaintiff then filed a second amended complaint seeking the reformation of the parties' written contract to include the oral promise for rebates and claiming breach of the contract as reformed. The trial court again granted defendant's motion to dismiss, evidently holding that equity would not reform or enforce a contract if the reformed contract would be unlawful and unenforceable.

Plaintiff appealed. The Court of Appeals held that although the contract was in violation of statutes, it was still enforceable because there was no clear legislative intent that the statutes forbidding oral agreements for rebates would render the contract unenforceable. It held that dismissal of the reformation claim was error because the contract was enforceable. It also held that plaintiff may proceed on the fraud claims and should be permitted to prove that it relied on and was induced by defendant's alleged false and misleading representations.

---

shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion to dismiss: * * * (8) failure to state ultimate facts sufficient to constitute a claim, * * *. A motion to dismiss making any of these defenses shall be made before pleading if a further pleading is permitted. The grounds upon which any of the enumerated defenses are based shall be stated specifically and with particularity in the responsive pleading or motion. * * *.

"* * * * *

"E. Motion to Strike. Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 10 days after the service of the pleading upon such party or upon the court's own initiative at any time, the court may order stricken: (1) any sham, frivolous, or irrelevant pleading or defense or any pleading containing more than one claim or defense not separately stated; (2) any insufficient defense or any sham, frivolous, irrelevant or redundant matter inserted in a pleading. If, on a motion under this section, the facts supporting the motion do not appear on the face of the pleading or defense and matters outside the pleading or defense, including affidavits and other evidence, are presented to the court, all parties shall be given a reasonable opportunity to present evidence and affidavits and the court may determine the existence or nonexistence of the facts supporting such motion if such facts are not materially disputed or may defer such determination until further discovery or until trial on the merits."

■       We granted defendant's petition for review and reverse.

The oral agreement for rebates, alleged by plaintiff and not denied by defendant, violates both ORS 746.035 and ORS 746.045:

### ORS 746.035:

"Except as otherwise expressly provided by the Insurance Code, no person shall permit, offer to make or make any contract of insurance, or agreement as to such contract, unless all agreements or understandings by way of inducement are plainly expressed in the policy issued thereon."

### ORS 746.045:

"No person shall personally or otherwise offer, promise, allow, give, set off, pay or receive, directly or indirectly, any rebate of or rebate of part of the premium payable on an insurance policy or the agent's commission thereon, or earnings, profit, dividends or other benefit founded, arising, accruing or to accrue on or from the policy, or any other valuable consideration or inducement to or for insurance on any domestic risk, which is not specified in the policy."

Courts generally refuse to help someone who complains that an illegal promise has not been performed. *Hendrix v. McKee*, 281 Or 123, 128, 575 P2d 134 (1978). If all contracts that violate a statute were unenforceable per se, or if the above statutes indicated whether contracts made in violation thereof are either void or enforceable, we would need to look no further. But this is not the case.

■■       The general rule is from *Uhlmann v. Kin Daw*, 97 Or 681, 689, 193 P 435 (1920):

"If a statute having a penalty and a prohibition, express or implied, or only a penalty or only a prohibition, is silent and otherwise contains nothing from which the contrary is to be inferred, then an agreement which conflicts with the statute is void."[3]

---

[3] The word "void" when applied to legally questionable agreements or other transactions may be overly broad, if it is taken to mean that such agreements have no legal effects. Ordinarily what is meant is that the illegal contract is not enforceable between the parties (or, if "voidable," can be set aside by either of them). The substance and purpose of the rule that makes the agreement illegal determines in what respect the agreement cannot be effective. In this case, for instance, we do not imply that Mt. Fir's employees were not covered under the contract.

■ The statutes with which we are concerned are prohibitions, and ORS Chapter 731 lists possible penalties for violations thereof. The statutes are silent as to whether agreements in violation of them are unenforceable. The statutes, by themselves, contain nothing from which we can infer that the legislature intended that such agreements should be enforceable. Applying the general rule, we find that this agreement made in violation of statutes should not be enforced.

In *Hunter v. Cunning,* 176 Or 250, 287, 154 P2d 562, 157 P2d 510 (1945), we summarized our holding from *Uhlmann:*

"\* \* \* We derived therefrom the fundamental distinction between the Uhlmann case and the case at bar, viz., that the rule, which avoids a contract made in contravention of a statute, will *always* be applied when the statute is intended for the protection of the public against those evils which we know from experience society must be guarded against by protective legislature. The statute under consideration is such a one."

We followed this rule in *Bronson v. Moonen,* 270 Or 469, 478-81, 528 P2d 82 (1974), in which vendors of property did not comply with a administrative rule requiring a written statement by the public health officer concerning the proposed method of sewage disposal. This failure to comply rendered the contract at least voidable because the rule was for the protection of the public.

■ In *Huff v. Bretz,* 285 Or 507, 518, 592 P2d 204 (1979), after review of the above cases, we suggested that a lease provision that would require a lessor to violate Oregon statutes relating to water rights might well have been voidable, because these statutes were designed for the protection of the public. We have the same situation in the present case; the statutes violated were enacted for the protection of the public.

■ We find nothing in the facts of this case that would require us to modify or depart from this general rule. Plaintiff makes extensive arguments based on the "equities" of its case. It urges us to allow it to proceed in this action, so that defendant does not benefit from its illegal bargain. We note,

however, that ORS 737.265(2),[4] as it was at the time of this contract, required all insurers to adhere to rates, rating systems and policy forms of the rating organization. Statutes at that time restrict competition in the field of workers' compensation insurance to services offered by the competing companies, rather than allowing an insurer to compete by undercutting other companies with lower premiums. This evidently was done to guarantee that all insurers would have sufficient funds to cover claims filed by the injured workers. Plaintiff in essence argues that it was an innocent victim in the making of this illegal contract. However, it cannot avoid the fact that the statutes not only forbid an insurer from offering inducements and rebates that are not included in the written contract, but also specifically forbid the insured from receiving these inducements and rebates if they are not in writing. To allow plaintiff to enforce this agreement would be to read out of ORS 746.045 the word "receive," and ignore much of ORS 746.035. It would also allow plaintiff to benefit from the illegal bargain. This we will not do.

We further note that to deny plaintiff the right to enforce this contract will not result in any sort of forfeiture. Plaintiff paid for and received workers' compensation insurance coverage for the three year period of the contract. It does not allege that defendant failed in any respect to provide the coverage that the parties agreed upon. We also note that the portion of the contract that violates the statute is in no sense collateral to the oral agreement sought to be enforced; it is directly connected and an integral part. The situation would be different if plaintiff had paid premiums and defendant refused to pay claims, arguing that because of the rebate provisions the contract was illegal and unenforceable, because in that instance the illegal portion of the contract possibly might be severed. Nothing can be severed here, for plaintiff is asking us to enforce the illegal provision itself.

Plaintiff argues that if we refuse to enforce this contract, we will encourage insurers to engage in this sort of

---

[4] ORS 737.265(2):

"All insurers required by subsection (2) of ORS 737.560 to be members of a workmen's compensation rating organization shall adhere to the rates, rating systems and policy forms of the rating organization." *Amended by* Or Law 1977, ch 333 § 1.

conduct in the future. We think not. When purchasers of insurance are aware that if they have entered into insurance contracts in violation of the statutes, the courts of Oregon will refuse to come to their aid if the insurer asserts a defense of illegality, we believe that they will avoid this sort of contract in the future. At the time the parties made this contract, the legislature determined that for the good of the workers in the state the entire contract for workers' compensation insurance must be in writing and there would be no competitive rates in the workers' compensation field; to allow the enforcement of this agreement for illegal rebates that are not contained in the written contract would be to negate that decision. Such action would condone the very evil the legislature condemned.

■■■ Plaintiff also attempted to bring two counts of fraud, one seeking the amount of the promised rebates and the other seeking the money it spent in excess of what it would have paid had it continued with its less expensive insurance coverage with SAIF. It also requested punitive damages. The right to rely is an essential element of fraud. This is a conclusion of law and therefore, need not be pleaded as ultimate fact. *U.S. National Bank v. Fought*, 291 Or 201, 222, 630 P2d 337 (1981). One does not have the right to rely on a promise made in violation of a statute in an action for deceit. *Bond v. Graf*, 163 Or 264, 270, 96 P2d 1091 (1939); *Thielsen v. Blake, Moffitt & Towne*, 142 Or 59, 65, 17 P2d 560 (1932). *Burgdorfer v. Thielemann*, 153 Or 354, 55 P2d 1122 (1936), on which plaintiff relies, is not in point because the underlying agreement there was legal; the only conflict was with the Statute of Frauds.

The reasoning in *R.D. Reeder Lathing Co. v. Cypress Insurance Co.*, 3 Cal App3d 995, 84 Cal Rptr 98 (1970), a similar case in which the court allowed a fraud action, is not compelling because the court ascribed a different purpose to its antirebate statute and failed to address the question of the right to rely on an illegal promise in an action for deceit.

■■■ Plaintiff's final complaint requested reformation of the contract and damages for the breach thereof. If we were to reform the contract so that the oral agreement became part of the written contract, the contract would no longer violate ORS 746.035 and 746.045. We note, however, that other

statutes would be implicated. ORS 737.265(2),[5] 737.330(1),[6] and 743.006[7] required that a workers' compensation insurance contract adhere to set rates and be approved by the Insurance Commissioner. Just as ORS 746.035 and 746.045 forbid covert agreements for reductions of premiums, these three statutes forbid such overt agreements. We refused to reform a contract legal on its face into one that would be unlawful in *Mitchell v. Chernecki*, 286 Or 285, 292, 593 P2d 1163 (1979). We also decline to reform an agreement unlawful in one way so that it is unlawful in another.

Reversed.

---

[5] See n..4.

[6] ORS 737.330(1):

"No insurer shall make or issue a policy except in accordance with the filings which are in effect for the insurer as provided in this chapter."

[7] ORS 743.006:

"(1) Except where otherwise provided by law, no basic policy form, or application form where written application is required and is to be made a part of the policy, or rider, indorsement or renewal certificate form shall be delivered or issued for delivery in this state until the form has been filed with and approved by the commissioner. This section does not apply to:

"(a) Forms of unique character which are designed for and used with respect to insurance upon a particular risk or subject;

"(b) Forms issued at the request of a particular life or health insurance policy owner or certificate holder and which relate to the manner of distribution of benefits or to the reservation of rights and benefits thereunder; or

"(c) Forms of group life or health insurance policies, or both, which have been agreed upon as a result of negotiations between the policyholder and the insurer.

"(2) The commissioner shall within 30 days after the filing of any such form approve or disapprove the form. The commissioner shall give written notice of such action to the insurer proposing to deliver such form and when a form is disapproved the notice shall show wherein such form does not comply with the law.

"(3) The 30-day period referred to in subsection (2) of this section may be extended by the commissioner for an additional period not to exceed 30 days if he gives written notice within the first 30-day period to the insurer proposing to deliver the form that he needs such additional time for the consideration of such form.

"(4) The commissioner may at any time request an insurer to furnish him a copy of any form exempted under subsection (1) of this section."