On remand from Oregon Supreme Court (296 Or 708, 678 P2d 266 (1984)), resubmitted In Banc June 6, affirmed July 17, reconsideration denied September 13, petition for review allowed November 5, 1985 (300 Or 249)

WARM SPRINGS FOREST
PRODUCTS INDUSTRIES,
*Appellant,*

*v.*

EMPLOYEE BENEFITS INSURANCE CO.,
*Respondent.*

(A8010-05866; CA A24017)

703 P2d 1008

Howard G. Arnett, Bend, appeared for appellant. With him were R. L. Marceau and Johnson, Marceau, Karnopp & Petersen, Bend.

James N. Westwood, Portland, appeared for respondent. With him were Fredric A. Yerke, Bruce A. Rubin, and Miller, Nash, Yerke, Wiener & Hager, Portland.

BUTTLER, J.

Rossman, J., dissenting.

## BUTTLER, J.

■    This case comes to us on remand from the Supreme Court with instructions to consider principles of federal Indian law, which, because of our original disposition of the case, we did not reach. Plaintiff is an industry wholly owned and operated by Confederated Tribes of the Warm Springs Reservation of Oregon, a federally recognized Indian tribe.[1] Defendant, a foreign insurance company authorized to do business in Oregon, agreed to provide workers' compensation coverage for the tribe's wood products business, part of which is on the reservation and part of which is not. Plaintiff brought this action, alleging that defendant agreed to rebate a percentage of the insurance premiums, and sought damages for breach of that agreement, damages for fraud and misrepresentation, and reformation of the insurance contract. Defendant moved to strike the material allegations in each count, contending that the alleged rebate agreement is illegal under ORS 746.035 and 746.045, part of Oregon's Insurance Code. The motion was granted, and plaintiff appealed from the judgment dismissing its complaint.

We reversed, 64 Or App 856, 669 P2d 389 (1983), relying on our opinion in *Mountain Fir Lbr Co. v. EBI Co.,* 64 Or App 312, 667 P2d 567 (1983), in which we had held such an agreement enforceable. The Supreme Court granted review in both *Mountain Fir* and this case and concluded that, because rebate agreements are prohibited by statute for the purpose of protecting the solvency of workers' compensation insurance, such agreements are not enforceable. *Mountain Fir Lbr Co. v. EBI Co.,* 296 Or 639, 644, 679 P2d 296 (1984). On the basis of that holding, the court remanded this case as indicated at the outset of this opinion. *Warm Springs Forest Products Ind. v. EBI Co.,* 296 Or 708, 678 P2d 266 (1984). We have considered Indian law, as well as other principles, and affirm.

The stricken allegations were material to each of plaintiff's claims for relief. It is not necessary for the disposition of this case to quote all of them; one is representative:

---

[1] Agencies and enterprises of an Indian tribe are equivalent to the tribe itself for purposes of jurisdictional analysis. *Central Machinery Co. v. Arizona Tax Comm'n,* 448 US 160, 164 n 3, 100 S Ct 2592, 65 L Ed 2d 684 (1980); *Mescalero Apache Tribe v. Jones,* 411 US 145, 157 n 13, 93 S Ct 1267, 36 L Ed 2d 114 (1973); Cohen, *Handbook of Federal Indian Law* 355 (1982 ed).

"In connection with the sales proposal to induce plaintiff to purchase insurance from defendant, defendant, by letter dated January 22, 1976 and delivered to plaintiff at Warm Springs, Oregon, within the exterior boundaries of the Warm Springs Indian Reservation, and by written proposal dated May 30, 1976 and presented to plaintiff at Warm Springs, Oregon, within the exterior boundaries of the Warm Springs Indian Reservation, represented that for an enterprise with the same risk and premium level as plaintiff defendant would retain 22% of the gross annual premiums, when, in fact, the percentage of plaintiff's gross annual premium retained by defendant for a period of July 1, 1976, to June 30, 1977 was 32.4% and for the period July 1, 1977, to June 30, 1978 was 39.7%."

In addition to claims for damages based on misrepresentation, fraud and breach of contract, plaintiff sought to reform the insurance policy, which does not contain any reference to the alleged rebate, by adding the following agreements to the policy:

"1.   That plaintiff's net cost for the Worker's Compensation insurance was to be: claims expenses plus 22% of the earned premium * * *.

"* * * * *

"3.   That defendant's retention would be 22% of the earned premium."

Because the rebate agreement alleged is illegal under Oregon law, *Mountain Fir Lbr Co. v. EBI Co., supra,* there was no error in granting defendant's motion if Oregon law applies to this transaction. That is true not only of the contract-based claims, but also of the damage claims for misrepresentation and fraud, because allegations of fraud and misrepresentation cannot be used to circumvent the legislative policy forbidding such agreements. *Mountain Fir Lbr Co. v. EBI Co., supra,* 296 Or at 646.

Plaintiff contends that Oregon's anti-rebate statutes (ORS 746.035 and 746.045) do not apply to its alleged rebate agreement with defendant, because choice of law and Indian law principles preclude the application of Oregon's regulatory scheme to a contract made with an agency of an Indian tribe concerning matters on an Indian reservation. It also argues that the alleged agreement is not prohibited on the Warm Springs Reservation, because the tribe has not enacted a law

prohibiting such agreements and must be assumed to follow the common law, which does not invalidate them.

We need not determine what Warm Springs Indian law in regard to insurance rebate agreements might be.[2] First, defendant's motions were based on Oregon statutes. If the Oregon Insurance Code does not apply to the agreement, those motions fail, regardless of the state of Warm Springs Indian law. It would then be defendant's burden to raise affirmative defenses excusing compliance with the alleged agreement. If Oregon's Insurance Code does apply, tribal law concerning rebate agreements would be irrelevant. Second, if *federal* Indian law were to preempt state law, the *tribal* law would not be relevant. Third, and most important to our disposition of this case, if the tribe has consented[3] to the application of Oregon's Insurance Code by virtue of the parties' having agreed to it in this transaction, whether rebate agreements are otherwise lawful in Warm Springs Reservation is irrelevant.

■ The pleadings clearly present the question of whether the tribe consented to application of Oregon law, including the insurance code provisions in question, to this contract.[4] It is clear that the tribe agreed to the application of Oregon workers' compensation statutes and regulations to all matters governed by the insurance contract. Item 3 of the policy declarations provides that Oregon's Workers' Compensation

[2] Defendant concedes that "the tribe has never undertaken to regulate insurance transactions (specifically, to determine the legality of the rebate agreement in question) * * *."

[3] The issue of consent in the context of Indian law was not briefed by the parties. We consider it because it is an alternate ground for affirming the trial court, and because the facts that give rise to our finding of consent are apparent on the face of the complaint.

[4] The Warm Springs Indian tribe has not consented to general state civil jurisdiction over the reservation. *See* 41 Op Att'y Gen 48, 49 (1980); 40 Op Att'y Gen 31, 32 (1979); 37 Op Att'y Gen 412, 418 (1975). Plaintiff's filing this action in an Oregon court, although it constitutes consent to civil personal jurisdiction over plaintiff, does not constitute consent to state civil regulation of reservation matters. *Three Affiliated Tribes v. Wold Engineering,* ___ US ___, 104 S Ct 2267, 81 L Ed 2d 113, 122 (1984); *Williams v. Lee,* 358 US 217, 219-20, 79 S Ct 269, 3 L Ed 2d 251 (1959). A tribe may cede general civil jurisdiction only by following the tribal voting procedures specifically laid down by federal statute. *Kennerly v. District Court of Montana,* 400 US 423, 91 S Ct 480, 27 L Ed 2d 507 (1971). However, it has been held that a tribe or tribal agency may consent to state regulation governing an individual activity or agency. *Inecon Agricorporation v. Tribal Farms, Inc.,* 656 F2d 498, 501 (9th Cir 1981) (tribal enterprise not under federal law when registered as Arizona corporation, even though the corporate activity of agricultural land development and management involved land within the reservation).

Law applies to the insurance policy. The definition section of the policy provides that " 'Workmen's Compensation Law' means the Workmen's Compensation Law * * * of a state designated in Item 3 of the declarations * * *."

Although Oregon's Insurance Code (as distinct from the Workers' Compensation Law) is not expressly mentioned in the insurance agreement, it applies as a matter of law to this kind of policy when, as here, it is issued in Oregon by a California corporation authorized to sell insurance in Oregon, ORS 731.158(3), unless the fact that the insured is an Indian tribe makes it inapplicable. Condition 1 of the policy provides, in part:

> "* * * [I]f any change in classifications, or rating plans *is* or *becomes* applicable to this policy under *any law* regulating this insurance *or* because of any amendments effecting *[sic]* the benefits provided by the Workmen's Compensation Law, such change with the effective date thereof shall be stated in an endorsement issued to form a part of this policy." (Emphasis supplied.)

That condition appears to assume that the insurance is or may be or become regulated by some authority and that classification and rating plans applicable to it, and benefits provided by the applicable Workers' Compensation Law, may change, and that the changes "shall be in an endorsement to form a part of this policy." Clearly, that condition incorporates any changes in benefits under the Oregon Workers' Compensation Law, and there is no reason to believe that the all inclusive language, "any law regulating this insurance" excludes Oregon's Insurance Code.

If there were any doubt about that, the following endorsement, attached to and forming a part of the policy,[5] appears to resolve it.

---

[5] This provision was contained in the 1977 renewal policy. Because that is the only insurance contract incorporated in the tribe's pleadings, we must assume that the original 1976 contract was identical.

*"PARTICIPATING PROVISION*

"IT IS AGREED THAT THE PARTICIPATING PROVISION OF THE CONDITIONS OF THIS POLICY ARE *[sic]* HEREBY AMENDED TO READ AS FOLLOWS:

"EXCEPT AS PROVIDED, THIS POLICY SHALL PARTICIPATE IN PROFITS AS APPORTIONED BY THE BOARD OF DIRECTORS.

"IT IS *UNLAWFUL IN OREGON* FOR AN INSURER TO PROMISE TO PAY POLICYHOLDER DIVIDENDS FOR ANY UNEXPIRED PORTION OF THE POLICY TERM OR TO MISREPRESENT THE CONDITIONS FOR DIVIDEND PAYMENTS. DIVIDENDS WILL BE DUE AND PAYABLE ONLY FOR A POLICY PERIOD THAT HAS EXPIRED, AND ONLY IF DECLARED BY AND UNDER CONDITIONS PRESCRIBED BY THE BOARD OF DIRECTORS OF THE INSURER." (Emphasis supplied.)

The contract provisions appear to constitute an express, or at least a necessarily implied, *see* Restatement (Second) Conflict of Laws § 187, *comment a* (1971), choice by the parties to apply the relevant portions of Oregon's Insurance Code to the insuring agreement that is clearly governed by Oregon law. They also constitute a consent by plaintiff, as required by Indian law principles, to the application of that law. That consent and choice of law is not confined to the Workers' Compensation Law, because "any law" in condition 1 goes beyond "Workmen's Compensation Law," and the endorsement specifically addresses rebate agreements under Oregon law, which are governed by the insurance code.

Our conclusion is reinforced by other facts surrounding the contract. Because of its semi-sovereign status and its control over economic activity on its reservation,[6] and because the state has no regulatory control over the reservation,[7] the tribe was not required to procure workers' compensation insurance for its enterprises within the reservation. However,

---

[6] *Merrion v. Jicarilla Apache Tribe,* 455 US 130, 137, 102 S Ct 894, 71 L Ed 2d 21 (1982); 55 Interior Decisions 14, 50 (1934).

[7] *Washington v. Yakima Indian Nation,* 439 US 463, 470, 99 S Ct 740, 58 L Ed 2d 740 (1979); *McClanahan v. Arizona Tax Comm'n,* 411 US 164, 171, 93 S Ct 1257, 36 L Ed 2d 129 (1973); 41 Op Att'y Gen 48 (1980); 40 Op Att'y Gen 31 (1979); 37 Op Att'y Gen 412 (1975).

the tribe also operates a plant in Madras, off the reservation; chose to be insured within the framework of Oregon's Workers' Compensation system to compensate its injured workers; and chose an Oregon-qualified insurance company to provide that protection. Because the policy incorporates Oregon Workers' Compensation Law, it is heavily dependent on Oregon law for its administration and enforcement. Indeed, a significant portion of its performance must take place outside the reservation and by applying Oregon law.

The purpose of Oregon's Insurance Code is "the protection of the insurance-buying public." ORS 731.008. The specific provisions at issue, ORS 746.035 and 746.045, have as their purpose "to guarantee that all insurers would have sufficient funds to cover claims filed by the injured workers." *Mountain Fir Lbr Co. v. EBI Co., supra,* 296 Or at 645. By prohibiting rate competition among workers' compensation insurers, the legislature has benefited not only insurers, but employers and workers whose claims are thereby made more secure. Furthermore, because the rating system that sets premiums for Oregon workers' compensation insurers is dependent on enforcement of the Insurance Code anti-rebate statutes, those statutes must be considered part of the workers' compensation statutory scheme, although they are contained in a separate chapter of ORS.

Given the interdependence of the policy provisions, the Oregon Workers' Compensation statutes and the anti-rebate provisions of the Oregon Insurance Code, we perceive no basis for applying foreign law to a small portion of the parties' contract without some express indication that that was intended, especially when the anti-rebate principle is expressly referred to in the policy. Also, having availed itself of the Oregon workers' compensation system, one element of which is the increased security and solvency of insurance companies intended to be assured by the insurance code provisions at issue, the tribal agency may not now pick and choose between various benefits offered by the Oregon workers' compensation system. Presumably, plaintiff has benefited from the increased likelihood of solvency provided by the Oregon statutes.

The dissent apparently would apply the principle of *depecage,* by separating the issue of the legality of the alleged

rebate agreement from all other issues related to this contract and treating that single issue under a different law. Although in some cases courts have applied the law of different jurisdictions to separate issues in the same case under the principle of *depecage,* that principle does not apply where the parties have chosen which law should apply, either expressly or by incorporating provisions of that law into their contract. It is only when the parties have not made a choice of law that conflict of laws principles become applicable. Restatement (Second) Conflict of Laws § 188, *comments b, d.* Even in the absence of a choice of law by the parties, it would be difficult to separate the rebate agreement from the insurance agreement, because it has no significance independent of the insurance agreement and cannot be effectuated without a reference to the terms of that agreement and Oregon statutes to establish the claims expenses necessary for calculation of the alleged rebate.

A further problem with the dissent's approach is that this policy specifically covers activities at the tribe's plant at Madras Industrial Park, which is off the reservation. The territorial and semi-sovereignty arguments raised by the tribe clearly do not apply to the Madras plant, which is within the territorial jurisdiction of Oregon's Insurance Commission and is covered by Oregon's Insurance Code. Extension of the policy's coverage to that plant is convincing evidence that Oregon law was intended to govern the entire agreement between the parties; there is nothing to indicate that the parties intended the clear references to Oregon law in their agreement to refer only to the Madras plant. Apparently, the dissent would require not only the application of a different law to the single issue of legality of the rebate agreement, but a determination that the rebate agreement was legal as to that part of the policy covering operations on the reservation but illegal as to operations in Madras. Neither party suggests such an apportionment or partial legality approach, and we decline to adopt it in the absence of an express indication that the parties intended such a cumbersome result.

If the parties had not chosen to apply Oregon law by including specific references to it in their agreement, and by fashioning an agreement that could not be administered without reference to Oregon law, and if we were concerned solely with the tribe's operations on the reservation, the

alleged rebate agreement might well be enforceable.[8] We conclude that, because the parties chose to apply the Oregon Workers' Compensation Law, including the Insurance Code that applies to policies issued under that law, to this transaction, and by that choice, the tribe consented to the application of all of that law, the statutes in question are applicable to it.[9]

---

[8] Federal Indian Law principles which point toward such a result include territorial limitations on the reach of state regulatory power onto the reservation. *See* n 7, *supra.* Because state regulation on a reservation must be expressly approved by Congress, *McClanahan v. Arizona Tax Comm'n, supra,* 411 US at 171, defendant's argument that the McCarran-Ferguson Act, 15 USC § 1012, which does not mention Indians, gave the states jurisdiction over insurance matters involving reservation Indians is without merit. Federal preemption principles would also favor enforceability, because this contract involves areas fully controlled by federal law, such as regulation of federally financed tribal enterprises, control of economic development on the reservation, trading by non-Indians with Indians on the reservation, the management of Indian timber resources, and business contracts entered into on the reservation. *New Mexico v. Mescalero Apache Tribe,* 462 US 324, 335-36, 341, 343-44, 103 S Ct 2378, 76 L Ed 2d 611 (1983); *Ramah Navajo School Bd. v. Bureau of Revenue,* 458 US 832, 844, 102 S Ct 3394, 73 L Ed 2d 1174 (1982); *Merrion v. Jicarilla Apache Tribe, supra,* n 6; *Central Machinery Co. v. Arizona Tax Comm'n, supra,* n 1, 448 US at 164-65; *White Mountain Apache Tribe v. Bracker,* 448 US 136, 145-49, 100 S Ct 2578, 65 L Ed 2d 665 (1980); *Warren Trading Post v. Arizona Tax Com.,* 380 US 685, 690, 691 n 18, 85 S Ct 1242, 14 L Ed 2d 165 (1965); 55 Interior Decisions 14, 50 (1934).

Even if *federal* Indian law principles were not sufficient to exclude application of Oregon law to the alleged agreement, Warm Springs *tribal* law would still be the applicable law under choice of law analysis, if the contract did not, by its terms, make application of Oregon law both necessary and appropriate. Because state regulatory power does not normally extend into the reservation, Oregon has no apparent interest in preserving the solvency of an insurer doing business outside of Oregon's legislative jurisdiction. The *alleged agreement and insurance contract, as a whole, were both negotiated on the Warm Springs Reservation and were signed there. Payment of the alleged rebate, and payment by defendant of any tribal liability under the policy, also were to take place there.* Thus Warm Springs has more significant contacts with the contract than does Oregon.

[9] The dissent believes that our result "denigrates plaintiff's tribal sovereignty." (74 Or App at 432). That statement ignores the fact that the tribe could have negotiated an insurance contract that included *all* of the terms under which compensation would be paid without incorporating the laws of Oregon or any other state. *Plaintiff does not contend that defendant fraudulently induced it to incorporate* Oregon's workers' compensation laws rather than the laws of some other jurisdiction. For that reason, the dissent's reliance (74 Or App at 437-38) on Restatement (Second) Conflict of Laws § 187, *comment b,* is misplaced. Plaintiff's contention is that the fraud and misrepresentation induced it to change from a policy issued by SAIF to one issued by defendant; obviously, plaintiff had already chosen to be covered under Oregon's Workers' Compensation Law before dealing with defendant.

Lest it be said that it is absurd to hold that the parties chose the law of a state that would render their rebate agreement unlawful, the same may be said of the same agreement involved in *Mountain Fir Lbr Co. v. EBI Co., supra,* and the numerous other cases listed in the trial court judgment in this case. There could be several reasons for the parties' not being concerned with illegality: the insured might have relied on the law as we found it to be in the *Mountain Fir* case—agreement illegal but

Accordingly, the trial court did not err in striking the allegations relating to a rebate agreement that violated those statutes.

Affirmed.

**ROSSMAN, J.,** dissenting.

Because I am troubled by the ease with which the majority holds that the semi-sovereign Indian tribes of the Warm Springs Reservation have contracted to be governed by a complex Oregon law which thoroughly defeats the tribes' goals, I dissent.[1] My difficulties with holding that the tribes consciously chose that the Oregon Insurance Code should govern their contract are of two sorts. First, I believe that the holding fails to take proper account of Indian law principles and denigrates the tribes' sovereignty. Second, I think the majority's conclusion that the parties executed a choice-of-law provision is strained and illogical.

Because the insurance policy was issued in Warm Springs[2] to a federally recognized Indian tribe, this case was remanded for the express and limited purpose of applying Indian Law principles. In its haste to affirm the dismissal of plaintiff's claims, the majority virtually ignores that fact and

---

not void—or they might have relied on the good faith of defendant to perform, notwithstanding the illegality.

The dissent's objection that our result allows defendant to profit from its own misdeeds (74 Or App at 424 n 1.) should be directed at *Mountain Fir Lbr Co. v. EBI Co., supra.*

[1] My trouble with the majority approach is all the greater, given the apparently reprehensible nature of defendant's conduct in this case. I concede that the Supreme Court has decided that defendant is not liable to anyone under Oregon Law. Nevertheless, I am disturbed by defendant's conduct, the full extent of which becomes apparent from a perusal of its appellate brief. In support of the trial court's dismissal of this case, defendant points to 26 other cases cited in the appendix (by trial court numbers), all of which held that illegal contracts are unenforceable. Defendant had no trouble finding those cases inasmuch as in every one it was being sued to enforce a rebate agreement.

[2] The majority claims that the policy was issued in Oregon, 74 Or App at 427. That is simply not true. Plaintiff received and relied on defendant's representations at Warm Springs. Defendant's original letter offering insurance coverage was sent from California to the reservation. Later proposals were also made to plaintiff on the reservation. In July, 1976, plaintiff formally agreed to purchase insurance from defendant and it appears that the final decision was made by the tribal council at Warm Springs. Finally, the contract was executed at Warm Springs, although it was later countersigned in Portland.

adopts a rationale which is contrary to established legal principles and unsupported by the record. An analysis of Indian law principles is essential to resolve this case properly and to comply with the Supreme Court's mandate.

Under federal Indian law, the Warm Springs tribes, like other federally recognized tribes, are a distinct community. Although their reservation is within the exterior boundaries of Oregon, it is not fully part of the state. The tribes occupy their own territory, within particular boundaries, in which the laws of Oregon have no force, and into which the citizens of Oregon have no right to enter, except with the assent of the Indians themselves, or in conformity with treaties and acts of Congress. *See McClanahan v. Arizona Tax Comm'n,* 411 US 164, 168-69, 93 S Ct 1257, 36 L Ed 2d 129 (1973). Indian tribes were once fully sovereign, and they still retain a semi-sovereignty. Their claims to sovereignty predate that of our own government. The federal government has acquired a broad constitutional power over Indian affairs, often described as plenary. Cohen, Handbook of Federal Indian Laws 207 (1982 ed). Yet, there still exists a deeply rooted, longstanding policy of leaving Indians free from state jurisdiction and control; although the federal government may limit tribal sovereignty, the states on their own may not do so. *McClanahan v. Arizona Tax Comm'n, supra; Worcester v. Georgia,* 31 US (6 Pet) 515, 8 L Ed 483 (1832); *see also* Cohen, *supra,* at 232-35. As the Supreme Court has stated:

> "[Indian tribes] were and always have been regarded as having a semi-independent position when they preserved their tribal relations; not as states, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people, with the power of regulating their internal and social relations and thus far not brought under the laws of the Union or of the State within whose limits they reside." *United States v. Kagama,* 118 US 375, 381-82, 6 S Ct 1109, 30 L Ed 228 (1886).

In *Washington v. Yakima Indian Nation,* 439 US 463, 470, 99 S Ct 740, 58 L Ed 2d 740 (1979), the court stated a basic principle:

> "* * * [S]tate law reaches within the exterior boundaries of an Indian reservation only if it would not 'infringe on the right of reservation Indians to make their own laws and be ruled by

them.' Williams v. Lee, 358 US 217, 219-20, 3 L Ed 2d 251, 79
S Ct 269. * * *"

The rights of reservation tribes include "the sovereign power
of determining the conditions upon which persons shall be
permitted to enter [their] domain, to reside therein and to do
business." 55 Interior Decisions 14, 50 (1934); Cohen, *supra*,
at 254. Because the state may protect its interests only "up to
the point where tribal self-government would be affected,"
*McClanahan v. Arizona Tax Comm'n, supra*, 411 US at 179,
tribal power would appear to exclude state power to regulate a
contract with a tribal entity entered into on a reservation.
Furthermore, state laws generally do not apply on a reserva-
tion, except as expressly provided by Congress. *McClanahan v.
Arizona Tax Comm'n, supra*, 411 US at 171.

The state's inability to impose its regulatory power
on the reservation has been recognized by the Oregon Attor-
ney General as to the Workers' Compensation Board and the
Mental Health Division. 41 Op Att'y Gen 48 (1980); 40 Op
Att'y Gen 31 (1979); 37 Op Att'y Gen 412 (1975). That
inability is a natural consequence of Congress' express deci-
sion to exempt the Warm Springs reservation from its grant of
civil jurisdiction to the states in Public Law 280, 28 USC §
1360(a).

Federal preemption principles also disfavor the
application of state regulations to contracts made on a reser-
vation with Indians. Areas that have been fully occupied by
federal law and are relevant to this transaction include regula-
tion of federally financed tribal enterprises, control of eco-
nomic development on the reservation, trading by non-Indi-
ans with Indians on the reservation, the management of
Indian timber resources, and business contracts entered into
on the reservation. *New Mexico v. Mescalero Apache Tribe*,
462 US 324, 103 S Ct 2378, 76 L Ed 2d 611 (1983); *Ramah
Navajo School Bd. v. Bureau of Revenue*, 458 US 832, 844, 102
S Ct 3394, 73 L Ed 2d 1174 (1982); *Merrion v. Jicarilla Apache
Tribe*, 455 US 130, 137, 102 S Ct 894, 71 L Ed 2d 21 (1982);
*Central Machinery Co. v. Arizona Tax Comm'n*, 448 US 160,
164-65, 100 S Ct 2592, 65 L Ed 2d 684 (1980); *White Mountain
Apache Tribe v. Bracker*, 448 US 136, 145-49, 100 S Ct 2578, 65
L Ed 2d 665 (1980); *Warren Trading Post v. Arizona Tax Com.*,
380 US 685, 690, 691 n 18, 85 S Ct 1242, 14 L Ed 2d 165 (1965).

Federal law specifically preempts any state action which would burden a tribal enterprise operating in an area covered by federal law. Federal law covers the operation of a tribal timber enterprise. *Ramah Navajo School Bd. v. Bureau of Revenue, supra,* 458 US at 838-39; *White Mountain Apache Tribe v. Bracker, supra,* 448 US at 145, 148.

The Bureau of Indian Affairs' regulations comprehensively cover the field of Indian timber harvesting, and the Bureau must approve all contracts entered into by tribal timber industries. *White Mountain Apache Tribe v. Bracker, supra,* 448 US at 147. In *White Mountain,* the United States Supreme Court noted that federal agents "in reviewing or writing the terms of the contracts" entered into by the tribal industry "must predict the amount and determine the proper allocation of all business expenses, including fuel costs. The assessment of state taxes would throw additional factors into the federal calculus, reducing tribal revenues and diminishing the profitability of the enterprise for potential contractors." 448 US at 149. Here, the application of state regulation would impose a similar burden. Because the tribe and federal agencies would not be able to rely on the terms of agreements made with non-Indians, they would be subject to changes in plaintiff's rights by the application of Oregon regulations. When that is the case, the burden on a tribal enterprise is not permitted. *Ramah Navajo School Bd. v. Bureau of Revenue, supra* (state not allowed to impose transaction tax on gross receipts of non-Indian contractor which built school for tribe); *White Mountain Apache Tribe v. Bracker, supra* (non-Indian corporation hauling timber under contract with tribal enterprise on reservation may not be burdened by state motor carrier license tax or fuel tax); *Central Machinery Co. v. Arizona Tax Comm'n, supra* (non-Indian corporation which sold tractors to tribal enterprise on reservation could not be burdened with state transaction tax).

In each of those cases a corporation based in the state which sought to impose its tax or regulation was freed from that burden, because the incidence of the burden would fall upon the tribe or tribal agency. In this matter, the burden of losing the benefit of the alleged rebate agreement would be on the tribal agency itself. The connection to the tribes' sovereignty and ability to govern themselves is thus much closer

in this case than in the others. It would violate that sovereignty for Oregon to impose its insurance regulatory statues on a tribal contract made on the reservation. In view of federally mandated tribal power to regulate business transactions on the reservation, the state's inability to extend its regulations into the reservation, and federal preemption in areas governing this contract, Oregon's Insurance Code may not apply to this transaction without the tribe's consent.

Federal Indian law also requires states to allow Indian plaintiffs access to state courts to sue non-Indian defendants without giving up the peculiarly Indian law nature of their claims. *Bryan v. Itasca County,* 426 US 373, 384, 389, 96 S Ct 2102, 48 L Ed 2d 710 (1976); *Williams v. Lee,* 358 US 217, 219-20, 79 S Ct 269, 3 L Ed 2d 251 (1959). That is so because of limitations of procedure and remedy in tribal courts and because the public policy of a state may not be the public policy of the reservation.

Based on this wealth of irrefutable authority, I believe, beyond any doubt, that the law of the Warm Springs Reservation and not that of Oregon must govern the transaction entered into between plaintiff and defendant. I accept that, in almost any business transaction, the parties can contractually agree that some other law will govern a part of their relationship. It is undisputed that the parties contracted to have Oregon *workers' compensation* law apply. However, EBI does not claim in its brief that the tribes chose Oregon *insurance* law; that argument suddenly appears for the first time in the majority opinion. The provisions which the majority cites in support of that proposition are such slender reeds that they break in the process of examining them. The majority first quotes Condition 1 of the policy:

> "[I]f any change in classifications, or rating plans *is* or *becomes* applicable to this policy under *any law* regulating this insurance *or* because of any amendments effecting *[sic]* the benefits provided by the Workmen's Compensation Law, such change with the effective date thereof shall be stated in an endorsement issued to form a part of this policy." (Emphasis supplied by the majority.)

The references in that provision to "any law regulating this insurance" are not a statement that there is any such law. They could refer to a future insurance code which the tribes

might adopt as easily as to the present, but otherwise inapplicable, Oregon code. Nothing in this provision can be a decision by the tribe that the Oregon Insurance Code applies to the policy.

The majority then reads the following endorsement to the policy as an indication that Condition 1 of the policy adopts the Oregon Insurance Code:

*"PARTICIPATING PROVISION*

"IT IS AGREED THAT THE PARTICIPATING PROVISION OF THE CONDITIONS OF THIS POLICY ARE *[sic]* HEREBY AMENDED TO READ AS FOLLOWS:

"EXCEPT AS PROVIDED, THIS POLICY SHALL PARTICIPATE IN PROFITS AS APPORTIONED BY THE BOARD OF DIRECTORS.

"IT IS *UNLAWFUL IN OREGON* FOR AN INSURER TO PROMISE TO PAY POLICYHOLDER DIVIDENDS FOR ANY UNEXPIRED PORTION OF THE POLICY TERM OR TO MISREPRESENT THE CONDITONS FOR DIVIDEND PAYMENTS. DIVIDENDS WILL BE DUE AND PAYABLE ONLY FOR A POLICY PERIOD THAT HAS EXPIRED, AND ONLY IF DECLARED BY AND UNDER CONDITIONS PRESCRIBED BY THE BOARD OF DIRECTORS OF THE INSURER." (Emphasis supplied by the majority.)

This endorsement discusses policy dividends from general company profits, not rebates on policy premiums such as those at issue here. Even if it does apply to such rebates, it merely gives information about Oregon law; it does not make that law applicable when it would not otherwise be so. The information could just as well have been about the insurance codes of California, New Jersey or British Columbia. These provisions do not adopt any law for the purposes of the contract. The majority has strained mightily to make them do so but has produced only a terminally ill mouse. It should not make so weak an animal to carry so heavy a load.

The majority's conclusion that the parties chose Oregon law also contradicts traditional conflict of laws principles. Under section 187 of Restatement (Second) Conflict of Laws, the law of the jurisdiction chosen by the parties to govern their contractual rights will generally be applied.

However, there are exceptions to the general rule. Comment *b* to section 187 explains:

> "A choice-of-law provision, like any other contractual provision, will not be given effect if the consent of one of the parties to its inclusion in the contract was obtained by improper means, such as by misrepresentation, duress, or undue influence, or by mistake. Whether such consent was in fact obtained y improper means or by mistake will be determined by the forum in accordance with its own legal principles. * * *"

Many insurers offer workers' compensation coverage. Presumably, very few offer rebates. Plaintiff has alleged that it materially relied on the promise of a rebate when it entered into the contract. It seems inconceivable that plaintiff would have voluntarily chosen also to execute a choice-of-law agreement which invalidated what was arguably the only reason defendant was chosen as its insurance provider. Moreover, defendant's failure to argue that the parties chose Oregon law is strong evidence that no choice was intended. After all, why would defendant have failed in its motions, appellate brief and petition for review to point out the existence of a choice-of-law provision? The only logical explanation is that the parties never intended to include such a provision. On this record, we cannot tell how or whether consent to the supposed choice-of-law provisions was obtained. Those issues deserve full attention before plaintiff's suit can be summarily dismissed.

In addition, comment *e* to section 187 provides a corollary to the rule.

> "On occasion, the parties may choose a law that would declare the contract invalid. In such situations, the chosen law will not be applied by reason of the parties' choice. To do so would defeat the expectations of the parties which it is the purpose of the present rule to protect. The parties can be assumed to have intended that the provisions of the contract would be binding upon them (cf. § 188, Comment *b*). If the parties have chosen a law that would invalidate the contract, it can be assumed that they did so by mistake. If, however, the chosen law is that of the state of the otherwise applicable law under the rule of § 188, this law will be applied even when it invalidates the contract. Such application will be by reason of the rule of § 188, and not by reason of the fact that this was the law chosen by the parties."

Oregon law is not the law that would apply in the absence of a choice of law by the parties. Therefore, if application of Oregon law invalidates the contract, it can be assumed that it was chosen erroneously. Arguably, invalidating the rebate agreement does not invalidate the entire contract, but the rebate agreement is a separate side agreement and is, in effect, a discrete contract. The purported choice-of-law provision relates only to that side agreement and totally invalidates it. In the process, it completely defeats plaintiff's expectation of receiving a rebate. Accordingly, we should not apply Oregon law.

Perhaps recognizing the weakness of its conclusion that the contract expressly chooses Oregon law, the majority attempts to buttress its holding:

"Our conclusion is reinforced by other facts surrounding the contract. Because of its semi-sovereign status and its control over economic activity on its reservation, * * * and because the state has no regulatory control over the reservation, * * * the tribe was not required to procure workers' compensation insurance for its enterprises within the reservation. However, the tribe did choose to be insured within the framework of Oregon's Workers' Compensation system to compensate its injured workers, and chose an Oregon-qualified insurance company to provide that protection. Because the policy incorporates Oregon Workers' Compensation Law, it is heavily dependent on Oregon law for its administration and enforcement. Indeed, a significant portion of its performance must take place in Oregon.

"* * * * *

"Given the interdependence of the policy provisions, the Oregon Workers' Compensation statutes and the anti-rebate provisions of the Oregon Insurance Code, we perceive no basis for applying foreign law to a small portion of the parties' contract without some express indication that that was intended, especially when the anti-rebate principle is expressly referred to in the policy. Also, having availed itself of the Oregon workers' compensation system, one element of which is the increased security and solvency of insurance companies intended to be assured by the insurance code provisions at issue, the tribal agency may not now pick and choose between various benefits offered by the Oregon workers' compensation system. Presumably, plaintiff has benefited from the increased likelihood of solvency provided by the Oregon statutes." (Footnotes omitted.) 74 Or App at 428-29.

The majority's reasoning is fundamentally flawed. It vastly overemphasizes the significance of the tribe's decision to provide workers' compensation coverage under the Oregon workers' compensation system. It also looses track of our initial starting point in this case when it suggests that the law of Warm Springs is "foreign law."

The majority is correct that the parties expressly agreed, as a term of their contract, that coverage under the policy would be pursuant to and in compliance with Oregon workers' compensation law.[3] That choice is not difficult to understand. Rather than set up its own system to cover a relatively small number of workers, the tribes decided to avail themselves of an existing system. Theoretically, they could have chosen Idaho, California or Hawaii; they chose Oregon, presumably because it was convenient. The express choice of Oregon workers' compensation law bound the tribes contractually to the letter of that law. For example, they would be hard pressed to argue that an injury which is not compensable under Oregon law should be covered under the contract. Similarly, if defendant failed to honor a claim which is clearly valid under Oregon workers' compensation law, it would be in breach of contract but the breach would be under Warm Springs law for failing to comply, as it had agreed to, with the chosen workers' compensation law.

In other words, virtually every aspect of the transaction, including offer, acceptance, adequacy of the consideration, breach and any contractual defenses, is governed by Warm Springs law. Whether a particular injury is compensable would be decided in accordance with the Oregon workers' compensation system, but only because the parties so agreed under Warm Springs law. The adoption of Oregon workers' compensation law is not an adoption of all other Oregon laws which might regulate EBI's activities in some fashion and

---

[3]The majority would be well advised to examine the workers' compensation choice-of-law provision for an example of what an express choice of law looks like. It is contained in the definitions section of the policy and provides:

"[III](a) The unqualified term 'workmen's compensation law' means the workmen's compensation law and any occupational disease law of a state designated in Item 3 of the declarations, but does not include those provisions of any such law which provide non-occupational disability benefits."

In Item 3 of the declarations, Oregon is designated.

thus tangentially affect its performance under the contract. The adoption of Oregon workers' compensation law was necessary to achieve the tribes' purposes; the adoption of the Oregon insurance code was not.

Although we should not hold that this agreement contains a choice-of-law provision even if it were an agreement between two private parties, the tribes' semi-sovereign status provides an additional basis for questioning the majority's result. The majority holds, in effect, that by two ambiguous provisions the semi-sovereign tribes have adopted a complex insurance code as the law of the Warm Springs Reservation for at least some significant aspects of the reservation's functioning. It necessarily holds that the tribes did so without going through the normal tribal law-making procedures. We should hesitate long before undercutting tribal self-government in this fashion.

The situation is analogous to those where federal treaties and statutes have been advanced as placing limits on tribal sovereignty. Before holding that treaties or statutes limit tribal powers, courts have insisted on a clear and specific expression of congressional intent to extinguish sovereignty. *See, e.g., Santa Clara Pueblo v. Martinez,* 436 US 49, 98 S Ct 1670, 56 L Ed 2d 106 (1978); *Bryan v. Itasca County, supra.* Treaties and statutes have been consistently construed to reserve the right of self-government to the tribes, and the Supreme Court has held that this "tradition of sovereignty" is the "backdrop against which the applicable treaties and federal statutes must be read." *McClanahan v. Arizona Tax Comm'n, supra,* 411 US at 172-73.

The rule of strict construction has also been applied to nullify a tribe's attempt to waive its own sovereignty. In *Kennerly v. District Court of Montana,* 400 US 423, 91 S Ct 480, 27 L Ed 2d 507 (1971), the Supreme Court refused to find that the Blackfeet Tribe had waived its right to exclusive jurisdiction over civil matters arising on the reservation, even though the tribal council had adopted a resolution vesting concurrent jurisdiction in the Montana state courts. 400 US at 425. The tribal council's attempt fell short, because it failed to submit the matter to a general election within the reservation. 400 US at 429.

Although *Kennerly* is factually distinguishable from

this case, it is a vivid application of the general rule requiring strict scrutiny of both tribal and congressional attempts to limit tribal sovereignty. Because defendant drafted the contract and because the alleged choice-of-law provision would divest some of the tribes' sovereignty, that provision must be subjected to the same kind of scrutiny. As the foregoing discussion indicates, it cannot withstand that type of review.

The only case which the majority cites in support of finding tribal consent to state regulation of an individual activity is *Inecon Agricorporation v. Tribal Farms, Inc.,* 656 F2d 498 (9th Cir 1981). *Inecon* is so different from this case that it has little significance. The issue there was not tribal consent to state jurisdiction but whether a contract was valid without Interior Department approval. The entity being sued was not the tribe itself but a tribally-owned corporation, *organized under Arizona law* at the insistence of lenders who wanted a borrower subject to state and federal court jurisdiction. The Warm Springs Forest Products Industries is not an Oregon corporation, it is an agency of the tribes created under Warm Springs law. There is no indication that any lender or other entity insisted that it give up its sovereign immunity from suit in Oregon courts. *Inecon* is at best weak authority for the proposition that the tribes may consent by contract rather than by tribal vote to have their activities as sovereigns regulated by the state.

Lastly, the majority apparently assumes that, if the parties executed a choice-of-law provision adopting Oregon law, then plaintiff must necessarily lose on its fraud claim as well. That would appear to be the holding in *Mountain Fir Lbr Co. v. EBI Co.,* 296 Or 639, 679 P2d 296 (1984). The plaintiff there could not maintain a fraud action because "one does not have the right to rely on a promise made in violation of a statute." 296 Or at 646. However, that holding is not necessarily binding here. The only reason a rebate would be illegal in this case would be if the parties executed a choice-of-law provision adopting Oregon law. If that choice was intentional, plaintiff obviously cannot circumvent the effect of the choice by suing in fraud. However, if that decision to enter into the choice-of-law provision was induced by fraud, then the *Mountain Fir* holding is inapposite. Because the notion of a choice of law has not previously been raised, plaintiff had no reason

to allege fraud in the inducement. If the majority position prevails, plaintiff should be given that opportunity now.

In summary, I disagree with the majority's conclusion that two provisions in the contract constitute a choice of law as a *matter of law*. The provisions are ambiguous at best, and the circumstances under which they were executed are virtually unknown. A choice-of-law provision must be entered into deliberately and voluntarily. Because no one has raised the possibility of a choice of law until now, plaintiff has never had any reason or opportunity to present its version of what the provisions mean and how they became a part of the contract. Given the strict scrutiny to which any waiver of tribal sovereignty must be subjected, the availability of that opportunity is absolutely vital.[4]

For all of these reasons, I would reverse.

Warden, J., joins in this dissent.

---

[4]Because one of plaintiff's facilities is located off the reservation, the majority summarily concludes that, if plaintiff were to prevail, we would have to apportion the rebate. Although I would not concede the point, I do not respond to it here. Like the choice-of-law provision, the apportionment argument has never been raised by the parties. If it ever is, we would, of course, be obliged to address it, not before.