Argued October 7, 1965, reversed and remanded January 26, 1966

UNION BOND AND TRUST COMPANY et al *v.*
M AND M WOOD WORKING COM-
PANY et al

410 P. 2d 224

*James H. Clarke,* Portland, argued the cause for appellants. With him on the briefs were James C. Dezendorf, Marshall C. Cheney, Jr., George L. Kirklin, and McColloch, Dezendorf & Spears, Portland.

*Robert L. Sabin,* Portland, and *Richard K. Bush,* Seattle, Washington, argued the cause for respondents. With them on the brief were Roger L. Meyer, Jack B. Schwartz, and Sabin, Dafoe & Newcomb, Portland, and Richard J. Howard and Ryan, Askren, Carlson, Bush & Swanson, Seattle, Washington.

Before MCALLISTER, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

GOODWIN, J.

Union Bond and Trust Company, claiming to be the assignee of rights to purchase certain timber under a contract, brought this suit for specific performance and other relief. M and M Wood Working Company, as defendant, challenged the complaint by a general demurrer. The suit was dismissed, and Union Bond appeals.

Other parties have been named plaintiff and defendant, but for the purposes of considering the demurrer upon this appeal their interests, if any, are not material.

The contract under which Union Bond claims to be an assignee concerned the purchase and sale of timber and exchanges of timber and rights of way between one Ralph Hull and two of his corporations on the one hand and M and M on the other.

Ralph Hull was, at the time the contract was made, engaged in the lumber business, as an individual and also as the principal owner of several corporations. The contract refers generally to all the various Hull enterprises involved in the M and M negotiations as "Hull." There are, however, certain references to

Ralph Hull individually. By these references the contracting parties intended certain of the rights and obligations created by their agreement to affect only Ralph Hull individually.

Important in the case at bar, the right to purchase redwood timber at $6.00 per thousand board feet was personal to Ralph Hull. The contract also provided that none of the rights created under the contract could be assigned without the prior written consent of M and M. The contract defines the conditions under which M and M might withhold its consent to any proposed assignment.

Subsequently, Ralph Hull and two of his corporations entered into a contract with Union Bond. This contract, like the M and M contract, referred to Ralph Hull and his various enterprises collectively as "Hull," with occasional references to Ralph Hull individually. One paragraph of the contract with Union Bond reads as follows:

"12. (a) Hull agrees to and does hereby assign to Union all of the right, title and interest of Hull in and under that certain letter agreement dated April 16, 1951 by and between Hull, Union and Arrow Mill Co.

"(b) Hull agrees to assign to Union all of the right, title and interest of Hull in and to and under that certain agreement * * * by and between Hull and M and M Wood Working Company, subject, however, to the express condition precedent that the written consent of M and M Wood Working Company be first obtained. In this connection Hull agrees not to, in any way or in any manner, directly or indirectly, interfere with, hinder or delay, or take any action or do any thing inconsistent with the obtaining of such consent of said M and M Wood Working Company, and Hull

agrees to execute such documents as may be necessary, requested by Union, to effect such assignment and/or consent, and if Union determine to institute any proceeding or action in respect thereof, Hull hereby grants to Union the irrevocable power and authority to bring such proceeding or action in the name of *Hull and/or in his behalf,* at the sole cost and expense of Union, and Union shall pay any costs taxed against Hull in any such proceeding. Hull agrees that such assignment is and will be reasonable and that Union is a person who can reasonably be expected to carry out the terms of said agreement on the part of Hull to be kept and performed. Union agrees to perform all of the duties and obligations of Hull under said agreement, provided, however, that if such consent is not or cannot be obtained, then, at the option of Union and thirty days after written notice thereof to Hull, or if the option herein granted to Hull in paragraph 11 is exercised, Union's obligations thereunder shall forthwith cease and terminate. [Emphasis added.]

"(c) In the event that the option herein granted to Hull in paragraph 11 hereof is exercised as herein provided, Hull shall be relieved of any responsibility under paragraph 12(b) hereof, and Union agrees to reassign to Hull said Arrow Mill Co. and said M and M Wood Working Company agreement, if the same have previously been assigned to Union."

Based upon the foregoing language, Union Bond asserts that M and M must honor what is claimed to be Ralph Hull's assignment of his personal right to purchase redwood for $6.00 per thousand board feet. The price of redwood timber at the time of the complaint was alleged to be $30 per thousand board feet.

M and M reads the same language as creating no rights in Union Bond. M and M asserts that no assignment of Ralph Hull's personal rights ever came

into being. M and M contends that the quoted paragraph merely constitutes an agreement to assign such interests in the various described contracts as the Hull enterprises collectively had, if M and M should choose to assent to the scheme. M and M further contends that the parties never intended to deal with any personal rights held by Ralph Hull. If Ralph Hull's personal right to purchase timber had been within the contemplated assignment, M and M contends, such an intent would have been expressed.

While a number of issues have been tendered in the pleadings, and upon this appeal, the heart of this suit is whether Ralph Hull ever assigned to Union Bond his personal right to purchase redwood timber from M and M. If no such assignment was made, the defendants' other objections such as laches, non-consent, reasonable grounds for refusal of consent, and the like, would be immaterial. Without a valid assignment, Union Bond has no case. If Ralph Hull and Union Bond intended such an assignment, then the other issues may become material as matters of fact upon trial. We express no opinion upon any of these questions at this time, as they are not properly before us upon a demurrer to the complaint.

In sustaining the demurrer, the trial court construed the purported assignment too strictly against the pleader. Paragraph 12 (b), quoted from the Union Bond contract, admits of two meanings. It is apparent that the Hull group intended to assign something to Union Bond. The parties could have intended to assign only the rights owned by the Hull enterprises collectively, or they could have intended to include Ralph Hull's personal property (his right to buy redwood for $6.00). The intent is unclear because of the use of the words "in the name of Hull and/or

in his behalf."[1] When the parties referred elsewhere in the contract to Ralph Hull they did so by his full name. Yet if Ralph Hull personally was not assigning his separate rights, the "his" instead of "its," or "their," (referring to "Hull" as that term is used in the contract) appears to be erroneous. Thus, the paragraph requires the introduction of extrinsic evidence to clarify its meaning. See ORS 41.740. When such a state of affairs exists, a suit cannot ordinarily be terminated upon demurrer.

■ The decree is set aside with instructions to overrule the demurrer and to proceed to bring the cause to issue.

We have found no basis for reversing the trial court for striking certain legal conclusions from the second amended complaint. Accordingly, an assignment of error challenging that ruling is disregarded. We likewise disregard a variety of peripheral grounds urged by M and M in support of the order sustaining the demurrer. None can be said to appear on the face of the complaint.

Costs should be taxed in the trial court upon the entry of a final decree. No party should have costs in this court at this stage of the litigation.

Reversed and remanded.

---

[1] For criticism of "and/or" see Kornbrodt v. Equitable Trust Co., 137 Or 386, 389, 2 P2d 236, 3 P2d 127 (1931), and Ollilo v. Clatskanie P.U.D., 170 Or 173, 179–180, 132 P2d 416 (1942). Since "and/or" means either "and" or "or", the abomination itself is an ambiguity. We need not decide now the effect of other ambiguities that may lurk in the contract.