Argued and submitted December 4, 1985, affirmed March 25, 1986

WARM SPRINGS FOREST PRODUCTS INDUSTRIES,
*Petitioner on Review,*

*v.*

EMPLOYEE BENEFITS INSURANCE CO.,
*Respondent on Review.*

(TC No. A8010-05866; CA A24017; SC S32081)

716 P2d 740

Howard G. Arnett of Bend argued the cause for Petitioner on Review. With him on the petition were Dennis C. Karnopp, Ronald L. Marceau, and Johnson, Marceau, Karnopp and Petersen of Bend.

James N. Westwood of Portland argued the cause for Respondent on Review. With him on the response were Bruce A. Rubin, P. Conover Mickiewicz, and Miller, Nash, Yerke, Wiener & Hager of Portland.

618

Before Peterson, Chief Justice and Lent, Linde, Campbell, Carson and Jones, Justices.

PER CURIAM.

Carson, J., filed a dissent.

## PER CURIAM

In *Mountain Fir Lbr. Co. v. EBI Co.,* 296 Or 639, 679 P2d 296 (1984), we held that an insurer's oral promise to rebate part of the premium for workers' compensation coverage could not be enforced by the insured, because the promise was not "plainly expressed in the policy," as required by ORS 746.035.[1] We remanded the present case, in which the same insurer had made similar promises, to the Court of Appeals for consideration of a claim by the insured, an enterprise owned and operated by the Confederated Tribes of the Warm Springs Reservation of Oregon, that the prohibition against rebates did not apply to its transactions with the insurer. *Warm Springs Forest Products Ind. v. EBI Co.,* 296 Or 708, 678 P2d 266 (1984).

Warm Springs Forest Products Industries (hereafter Warm Springs) maintained that the contract must be enforced under the Confederated Tribes' Indian law and under federal Indian law. The Court of Appeals rejected this claim. The court held that Warm Springs agreed that its contract with the insurer (EBI) would be governed by Oregon law by virtue of two provisions of the policy. Condition 1 of the policy calls for changes in "classifications, or rating plans" required "under any law regulating this insurance" or affecting "the benefits provided by the Workman's Compensation Law" to be stated in an endorsement to the policy. The court read this policy provision as referring to some system of law that regulates insurance classifications and rating plans as well as workers' compensation benefits, which in the context of this transaction could only mean Oregon laws. The second provision is an endorsement to the policy noting that "[i]t is unlawful in Oregon for an insurer to promise to pay policyholder dividends for any unexpired portion of the policy term or to misrepresent the conditions for dividend payments." The court held that the two provisions evidenced a choice of the contracting parties to have the insurance contract governed by Oregon law and also a consent by plaintiff,

---

[1] ORS 746.035 provides:

"Except as otherwise expressly provided by the Insurance Code, no person shall permit, offer to make or make any contract of insurance, or agreement as to such contract, unless all agreements or understandings by way of inducement are plainly expressed in the policy issued thereon."

"as required by Indian law principles," to the application of Oregon law. *Warm Springs Forest Products Ind. v. EBI Co.,* 74 Or App 422, 428, 703 P2d 1008 (1985).

We do not think this holding depends on parsing the precise terms of the two quoted provisions. The provisions show that the existence of Oregon law regulating compensation insurance policies was not an unknown or unforeseen circumstance, and it is far more plausible to infer from their inclusion that the parties expected Oregon law to apply to the entire policy than that they chose Oregon law for some of its clauses and Warm Springs law for other clauses.

Warm Springs contends that only the tribal council, the governing body of the Confederated Tribes, could consent to the application of the Oregon insurance code on the Warm Springs Indian Reservation, and that nothing in the record shows that the council approved this insurance contract entered by the management of Warm Springs and EBI. EBI responds that approval by the tribal council is irrelevant, because Warm Springs necessarily claimed authority to enter into the contract for workers' compensation insurance on which it was bringing this action, and such contracting authority would extend to agreeing to a choice of the law governing the contract.

Warm Springs denies that it had authority to agree to the application of Oregon law to this insurance contract, and it relies on elaborate *dicta* in the opinion of the Court of Appeals for the proposition that without such a contractual choice of law, the rebate agreement "might well be enforceable." 74 Or App at 431.

These *dicta* assume that the Confederated Tribes have adopted some system of contract law that differs from Oregon contract law and that would sanction insurance contracts that would be illegal in Oregon. The assumption is not necessarily correct. EBI points to a provision of the tribal code that, at the relevant time, stated:

"*Law Applicable in Civil Actions.*

"In all civil cases, the Tribal Court shall apply any laws of the United States that may be applicable, any authorized regulations of the Interior Department and any ordinances or customs of the Tribes not prohibited by such Federal laws.

"Where any doubt arises as to the customs and usages of the Tribes the Court shall request the advice of not less than two impartial counsellors familiar with these customs and usages.

"Any matters that are not covered by this Code, the traditional customs and usages of the Tribe, or by applicable Federal laws and Regulations, shall be decided by the Court according to the laws of the State of Oregon."

Warm Springs responds that this provision states what law shall be applied in cases within the jurisdiction of the tribal court, and that the court's civil jurisdiction is limited to controversies between Indians involving no more than $3,000. The tribal code indeed stated what law should be applied in the tribal court in those cases that would come before it, but we are not persuaded that the substantive rules adopted in the tribal code for civil "matters" were to apply exclusively to transactions or claims of $3,000 or less. It seems wholly anomalous to maintain that the Confederated Tribes would adopt Oregon law (in the absence of contrary provisions of federal or tribal law) to be applied between members of the tribes in the tribes' own court and exclude the application of Oregon law in substantively identical matters when they are brought before an Oregon court, as in this case.

Justice Carson's dissenting opinion sets out in greater detail the reasons why an Oregon court may have to undertake an examination of Indian tribal laws and customs that have the effect of law. The general principles are not disputed. However, Warm Springs is in no position to insist that the circuit court or the appellate courts must seek out and take judicial notice of all possible sources of laws or customs of the Confederated Tribes in order to determine whether or not these hypothetical laws or customs would enforce this insurance contract or deny Warm Springs authority to consent to the application of Oregon law. A court may take judicial notice of the "decisional, constitutional and public statutory law of Oregon, the United States and any state, territory or other jurisdiction of the United States" (as well as of "foreign nations," in case tribal governments were not deemed an "other jurisdiction of the United States"), OEC 202, but a party cannot demand that a court take notice of undocumented law when the party does not supply the court with the necessary information. OEC 201(d). In this case, Warm

Springs referred to no tribal "custom or usage" and was unable, in oral argument, to specify any developed body of contract law under which parties should enter into and perform, and Oregon courts should enforce, such commercial or insurance contracts as the contract on which Warm Springs brings this action.

EBI does not dispute that Indian tribes have authority to make laws for persons, property, and transactions on their reservations and that various state taxes and regulations do not apply on Indian reservations. But Warm Springs' argument assumes that the prohibition of rebates by insurance companies is a state law "regulating" the Indian enterprise and that the law of insurance contracts without that prohibition is not such state law. It postulates that there is some difference between common law and statutory law that makes one but not the other applicable to transactions with Indians. The argument does not specify the "common law" of any jurisdiction nor whether "common law" includes or excludes doctrines and remedies of equity such as, for instance, specific performance, reformation, or estoppel. Warm Springs does not explain how this theory would apply to transactions governed by the Uniform Commercial Code (ORS chapters 71 to 79), the unfair trade practice law (ORS 646.605 to 646.652), or the products liability law (ORS 30.900 to 30.925), many of which a member of the Confederated Tribes might have occasion to invoke.

Warm Springs' argument comes down to a contention that it could not validly agree to such a choice of Oregon law because Oregon's law "has the effect of invalidating the rebate agreement, the main reason plaintiff bought the policy," and that "a contractual choice to apply foreign law which is contrary to the fundamental public policy of the place where the contract is made and performed will not be given effect," citing Restatement, Second, Conflict of Laws § 187(2)(b) (1971). In essence, Warm Springs maintains that it could choose (and enforce in this action) Oregon rules governing insurance contracts to the extent that they protect its interests but could not agree to those rules that proved unfavorable to itself.

We do not believe that Warm Springs' agreement to a choice of Oregon law contravenes the "fundamental public

policy" of the Confederated Tribes. It is not contrary to the policy expressed in the tribal code's reference to Oregon law in the absence of governing federal law or Indian written or customary law. To the contrary, we doubt that the Confederated Tribes, which engage in many substantial business transactions with the world outside the reservation, would believe that they would be best served by adopting a public policy that would cast doubt not only on the sources, nature and rules of law governing those business transactions, but even on the ability of tribal enterprises to agree to a choice of the applicable law. We think it is as likely that the tribes would want to be able, and their members to be able, to invoke provisions of Oregon law that are designed to protect consumers and other contracting parties against risks such as, in this instance, the risk of inadequately secure insurance. In any event, Warm Springs presents nothing to show such a "fundamental public policy" invalidating its agreement to a choice of Oregon insurance law beyond the assertion that it might not have chosen EBI's insurance policy if it had known that EBI's promised premium rebate was unenforceable.

For these reasons, we affirm the decision of the Court of Appeals and the judgment of the circuit court.

**CARSON, J.,** dissenting.

The majority holds that the written insurance contract evidenced a choice by the parties to have Oregon law apply to all aspects of the transaction. I do not believe that this conclusion can be reached from the record before us and the procedural posture of this case. However, if the majority is correct on that point, Warm Springs law would not apply to this case, and it is neither necessary for the court to consider what the applicable law of Warm Springs is, nor appropriate to reach conclusions about that issue, the status of which largely was undeveloped by the parties. Further, I disagree with the conclusions the majority reaches on that issue.

Perhaps the majority's conclusions would be correct had this case been fully tried, a factual record developed, and findings made on the disputed issues of fact. The majority does not indicate that the question before us is whether motions to strike material allegations of the complaint, and to dismiss the claims from which those allegations are to be stricken, were properly granted. The majority opinion at least

implicitly relies on assumptions regarding some disputed issues of fact which we may not resolve when considering such motions.

## I.   THE PROCEDURAL SETTING

Plaintiff (WSFP) did not initially purport to raise its claims under anything other than Oregon law. WSFP alleged that defendant (EBI) represented that it would retain only 22 percent of WSFP's premiums, but in fact retained over 32 percent in 1976-77 and over 39 percent in 1977-78. WSFP claimed that the representation was fraudulent and that WSFP was entitled to damages for premium overcharges. WSFP's rebate claim paralleled those made by several Oregon employers to whom EBI allegedly had made similar representations.

As it did in the litigation with other employers, EBI moved, pursuant to ORCP 21 E., for an order striking the paragraph of WSFP's first amended complaint which alleged the rebate agreement. The basis for the motion was that the rebate agreement would be illegal under ORS 746.035, and unenforceable. The trial court granted the motion but gave WSFP ten days to plead further.

WSFP filed a second amended complaint, changing the allegation concerning the rebate agreement by adding the emphasized language:

"In connection with the sales proposal to induce plaintiff to purchase insurance from defendant, defendant by letter dated January 22, 1976, *and delivered to plaintiff at Warm Springs, Oregon,* and by written proposal dated May 30, 1976 *and presented to plaintiff at Warm Springs, Oregon,* represented that for an enterprise with the same risk and premium level as plaintiff, defendant would retain 22% of the gross annual premiums, when in fact the percentage of plaintiff's gross annual premium retained by defendant for the period July 1, 1976 to June 30, 1977 was 32.4% and for the period July 1, 1977 to June 30, 1978 was 39.7%."

WSFP also added claims that the written insurance contract should be reformed to include the oral rebate agreement, and that WSFP should be awarded damages for breach of the contract as reformed.

EBI moved to strike WSFP's fraud claim in the

second amended complaint on the ground that WSFP had failed to obey the order granting the first motion to strike. EBI also moved to dismiss (for failure to state ultimate facts sufficient to constitute a claim) WSFP's claims for reformation and breach of contract. Alternatively, EBI moved to strike all allegations involving the rebate agreement on the ground they were "sham, frivolous and irrelevant."

EBI maintained that the claims relied on the same alleged rebate agreement which the court, in granting the earlier motion, implicitly already had found unenforceable under Oregon law. WSFP responded that its theory was that Warm Springs law rather than Oregon law should apply to the transaction. EBI argued that Oregon law should apply and that WSFP had not cited "federal or Indian law * * * to suggest that rebates are permitted." WSFP replied that no prohibition of premium rebate agreements "exists in the common law or on the Warm Springs Indian Reservation. Consequently, Oregon state law and Warm Springs tribal law are in direct conflict."

The trial court ultimately disposed of EBI's motions by ordering the second amended complaint "amended by interlineation" to indicate that "Warm Springs, Oregon," is "within the exterior boundaries of the Warm Springs Indian Reservation." It then ordered stricken all allegations referring to the rebate agreement. The court added that "to the extent not stricken * * *, plaintiff's claims [other claims, not at issue in this appeal] are dismissed without prejudice," implying that the claims from which allegations had been stricken were dismissed with prejudice. In effect, the order and final judgment dismissed the claims on the grounds that, without the stricken allegations concerning the rebate agreement, there was nothing left of the fraud, reformation and breach of contract claims.

## II. MERITS OF EBI'S MOTIONS

Once WSFP indicated that the allegations in its second amended complaint were not merely repetitions of claims already rejected under Oregon law but instead were attempts to state claims under Warm Springs law, the allegations could be stricken if they were "sham, frivolous, [or] irrelevant, * * *." ORCP 21 E. The allegations certainly could not have met all three grounds, as EBI charged, for this court

has said that "sham" and "frivolous" have two mutually exclusive meanings.[1] EBI argued not that the allegations were "sham" or untrue, but that they were "frivolous" or "irrelevant" in the sense that even if they were true, the law would not recognize claims for relief based upon those allegations.

Thus, in substance, the basis for what EBI called "motions to strike" was the argument that WSFP's second amended complaint failed to state ultimate facts sufficient to constitute claims for relief. *See* ORCP 21 A.(8). This court frequently has criticized the use of "motions to strike" for this purpose,[2] but when they are, in substance, motions to dismiss for failure to state sufficient ultimate facts, we have treated them as such; we take all well-pleaded facts alleged in the complaint as true for purposes of resolving the legal issues. *See Oksenholt v. Lederle Laboratories,* 294 Or 213, 215, 656 P2d 293 (1982) (under pre-ORCP law, treating such a motion to strike as though it were a demurrer); *Harris v. Northwest Natural Gas Company,* 284 Or 571, 573, 588 P2d 18 (1978) (same); *Reliable Credit Assn. v. Credithrift of Amer.,* 280 Or 233, 235, 570 P2d 379 (1977) ("the well-pleaded allegations of the complaint are taken as being true").

Because *Mountain Fir Lbr. Co. v. EBI Co.,* 296 Or 639, 679 P2d 296 (1984), established that no claims such as WSFP's can be recovered upon under Oregon law, WSFP's complaint could have stated ultimate facts sufficient to constitute a claim for relief, if at all, only under the law of Warm Springs. The complaint failed to state sufficient ultimate facts even under Warm Springs law if either (A) Warm Springs law could not apply to the transaction, even assuming all well-pleaded facts in WSFP's favor, as a matter of law; or (B) under Warm Springs law, like Oregon law, the rebate agreement was unenforceable. If either were the case here, the allegations concerning the rebate agreement were properly stricken from

---

[1]It is incorrect to move to strike on grounds that an allegation is "sham and frivolous," because no allegation can be both "sham" ("good in form but false in fact; * * * a pretense because it is not pleaded in good faith") and "frivolous" ("true in its allegations, [but] totally insufficient in substance"). *Andrysek v. Andrysek,* 280 Or 61, 69 n 8, 569 P2d 615 (1977). We have suggested that trial courts refuse to consider motions to strike alleging that material is both sham and frivolous. *Wash. Squ. v. First Lady Beauty Salons,* 290 Or 753, 756 n 4, 625 P2d 1311 (1981).

[2]*See, e.g., Harris v. Northwest Natural Gas Company,* 284 Or 571, 573 n 1, 588 P2d 18 (1978); *Klerk v. Teletronix, Inc.,* 244 Or 10, 12, 415 P2d 510 (1966).

the complaint, because they could not support a claim for relief.

A. *Complaint's Sufficiency to Allege Applicability of Warm Springs Law.*

A complaint states facts sufficient to constitute a claim for relief if it contains allegations which permit the introduction of evidence which will satisfy the elements of that claim. *Adams v. Oregon State Police,* 289 Or 233, 241, 611 P2d 1153 (1980). Here, WSFP has pleaded allegations of fact sufficient to permit the introduction of evidence that Warm Springs law could apply to any of its claims.

Two of WSFP's claims, those for reformation and for breach of contract, are contractual. As to contractual claims, we have indicated that "the public policy of Oregon should prevail and the law of Oregon should be applied" unless the interests of the other jurisdiction are "clearly more important than" Oregon's. *Lilienthal v. Kaufman,* 239 Or 1, 16, 395 P2d 543 (1964).

In this case, WSFP has pleaded ultimate facts which would permit the introduction of evidence that Warm Springs has a "clearly more important" interest than does Oregon in having its law apply. The complaint alleges generally that WSFP is a division of Warm Springs with its place of business on the reservation, and specifically that it was on the reservation that EBI made, and WSFP received, the rebate proposal. These allegations would allow WSFP to introduce evidence from which one could conclude that Warm Springs has an overriding interest in having its own law govern the conduct of foreign businesses which come onto the reservation, or initiate contact with Warm Springs, for the purpose of making representations that may induce Warm Springs divisions or enterprises to contract with those businesses rather than others. Thus, Warm Springs law could apply to WSFP's claims.

WSFP also seeks damages in tort for alleged fraud in the representations concerning rebates. This court has looked to the Restatement (Second) Conflicts of Law to resolve conflicts of law issues in tort actions. *Casey v. Manson Constr. Co.,* 247 Or 274, 278-80, 287-92, 428 P2d 898 (1967). Section 148 of the Restatement addresses the torts of fraud and negligent misrepresentation, stating that:

"(2)  When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

"(a)  the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

"(b)  the place where the plaintiff received the representations,

"(c)  the place where the defendant made the representations,

"(d)  the domicil, residence, nationality, place of incorporation and place of business of the parties,

"(e)  the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

"(f)  the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant."

The well-pleaded allegations of the complaint indicate that at least four of the six Restatement criteria favor applying Warm Springs law to determine whether WSFP's fraud claim is actionable. WSFP's complaint alleged that: WSFP received EBI's representations on the reservation, *see* Restatement, criterion (b), *supra;* EBI made the representations on the reservation, criterion (c), *supra;* WSFP is a division of the Warm Springs Tribe with its place of business on the reservation, criterion (d), *supra;* and the facility EBI insured for workers' compensation coverage was WSFP's manufacturing operation located on the reservation, criterion (e), *supra.* Thus, Warm Springs law could apply to WSFP's fraud claim.

The majority, however, agrees with the Court of Appeals' majority that Warm Springs law does not apply to the transaction. *Ante,* 300 Or at 620. I disagree for two reasons.

First, because the complaint sufficiently pleads facts to allow the introduction of evidence that Warm Springs law

applies, no court can say that the rebate allegation is "frivolous" or "irrelevant," or that the complaint fails to state ultimate facts sufficient to constitute a claim, unless it can say as a matter of law that under *Warm Springs law* the contract evidenced a choice of law. Regardless of whether the written language would constitute a choice of law under Oregon law, it cannot be said that the parties chose Oregon law unless the language would have the same effect under Warm Springs law. There is no indication that Warm Springs law resolves contractual choice of law problems in the same manner as does Oregon law.

Second, the provisions upon which the majority relies to find a contractual choice of law are too ambiguous to demonstrate that, as a matter of Oregon law, WSFP consented to the application of Oregon's anti-rebate statute. Setting aside the question of what, under Warm Springs law, constitutes a choice of foreign law, and assuming with the majority that WSFP's authority to enter into an insurance contract included the authority to consent (without express tribal council approval) to the application of Oregon law, *ante,* 300 Or at 620, I am convinced that the ambiguities in the contract present a factual dispute about the parties' choice of law that we are in no position to resolve in reviewing the granting of these motions.

The first provision, Condition 1 of the policy, provides:

"* * * [I]f any change in classifications, or rating plans is or becomes applicable to this policy under *any law regulating this insurance* or because of any amendments effecting [sic] the benefits provided by the Workmen's Compensation Law, such change with the effective date thereof shall be stated in an endorsement issued to form a part of this policy." (Emphasis supplied.)

The phrase "any law regulating this insurance" could refer to tribal law. As the dissent in the Court of Appeals noted:

"The references in that provision to 'any law regulating this insurance' are not a statement that there is any such law. They could refer to a future insurance code which the tribes might adopt as easily as to the present, but otherwise inapplicable, Oregon code. Nothing in this provision can be a decision by the tribe that the Oregon Insurance Code applies to the policy." 74 Or App at 436-37 (Rossman, J., dissenting).

The other provision upon which the majority relies provides that:

"IT IS AGREED THAT THE PARTICIPATING PROVISION OF THE CONDITIONS OF THIS POLICY ARE [*sic*] HEREBY AMENDED TO READ AS FOLLOWS:

"EXCEPT AS PROVIDED, THIS POLICY SHALL PARTICIPATE IN PROFITS AS APPORTIONED BY THE BOARD OF DIRECTORS.

"IT IS *UNLAWFUL IN OREGON* FOR AN INSURER TO PROMISE TO PAY POLICYHOLDER DIVIDENDS FOR ANY UNEXPIRED PORTION OF THE POLICY TERM OR TO MISREPRESENT THE CONDITIONS FOR DIVIDEND PAYMENTS. DIVIDENDS WILL BE DUE AND PAYABLE ONLY FOR A POLICY PERIOD THAT HAS EXPIRED, AND ONLY IF DECLARED BY AND UNDER CONDITIONS PRESCRIBED BY THE BOARD OF DIRECTORS OF THE INSURER." (Emphasis supplied.)

This policy provision is susceptible to at least two interpretations: that Oregon law was adopted or that the policy language merely gives information about Oregon law. Nothing in the provision, however, makes Oregon law applicable when it would not otherwise apply. Moreover, as the Court of Appeals' dissent noted, policy dividends from general company profits are not the same as the rebates on policy premiums at issue here, and if they were, a declaration of Oregon law is not an adoption of Oregon law. 74 Or App at 437.

After asserting that the holding in this case does not depend upon "parsing the precise terms" of these provisions, the majority concludes that "it is far more plausible to infer from their inclusion" that the parties expected Oregon law to apply to the entire policy, because the provisions show that the existence of Oregon insurance law was "not an unknown or unforeseen circumstance." *Ante,* 300 Or at 620. If the majority's conclusion depends upon its view of the most "plausible inference" about what the parties in fact expected when they made the contract, and the majority is unwilling to rely solely on the assertion that the words of the written agreement unambiguously express those expectations, then the parties' evidence about negotiations and other matters not appearing within the four corners of the contract should also be considered.

However, in considering EBI's motions, it was not the trial court's role to take evidence and to resolve factual disputes; its role was only to decide whether, under any set of facts, WSFP might be able to prove, given its allegations and the language of the written contract, there could be a claim for relief under Warm Springs law. The majority should not now, by resolving in the moving party's favor a disputed factual issue regarding the parties' expectations, assume a different role.

The circumstances under which these ambiguous provisions were drafted are unknowable on a motion directed to the pleadings without a factual record. Where extrinsic evidence is needed to clarify the meaning of a contract provision, an action involving that contract cannot ordinarily be terminated on demurrer (the predecessor of today's motion to dismiss for failure to state ultimate facts sufficient to constitute a claim for relief). *Union Bond v. M & M Wood Working,* 242 Or 451, 456, 410 P2d 224 (1966). Moreover, if it is proper for the court to resolve the ambiguities in the written insurance contract at this procedural stage, we should construe those ambiguities in favor of the policy holder (WSFP) rather than the author of the document. *See Wallace Co. v. State F.M. Auto. Ins. Co.,* 220 Or 520, 525, 349 P2d 789 (1960).

I cannot agree with the majority that, as a matter of law, the contract demonstrates a choice of Oregon law so as to warrant granting EBI's motions. If the majority so holds, however, Warm Springs law does not apply and there is no need for the majority, *ante,* 300 Or at 620, to discuss whether the agreement would be enforceable under that law. Although I conclude that Warm Springs law could apply and therefore that the motions should not be resolved on contractual choice of law grounds, the court's result might rest on the alternative ground that even if Warm Springs law applied, it would not allow recovery under WSFP's theories. It is necessary, therefore, to explain why I do not believe we can uphold the granting of the motion on that alternative ground.

B. *Enforceability of Agreement Under Warm Springs Law.*

WSFP relies not, as the majority asserts, on *dicta* in the Court of Appeals' opinion, *ante,* 300 Or at 620, but on the

straightforward claim that Warm Springs would apply common law contract principles in this case. The parties agree, without presenting authority, that under common law principles, an insurance rebate agreement made with the familiar formalities necessary to establish a binding contract would be enforceable, absent a provision — like Oregon's statute — voiding such agreements as contrary to public policy. WSFP's claim, therefore, does not require one to assume that Warm Springs had "adopted some system of *contract* law that differs from Oregon *contract* law," *ante,* 300 Or at 620 (emphasis added); it only requires that Warm Springs has some law of enforceable agreements which is like the common law about which the parties agree and has not been specifically modified by a statute like ORS 746.035. EBI, the moving party, never has denied that such Warm Springs law exists, but until the case reached this court for the second time simply maintained that WSFP had failed to show affirmatively that Warm Springs law would resolve this case differently from the resolution under Oregon's statute.

I agree with the majority that we should look to the tribal code provision on *"Law Applicable in Civil Actions"* to which EBI has directed our attention. It would be "wholly anomalous," *ante,* 300 Or at 621, for Oregon courts dealing with questions of Warm Springs law to ignore the tribal code choice-of-law provision because the money involved exceeded the tribal court's jurisdictional amount. We would have nothing to go on without that provision.

The tribal code provision says that only matters which "are not covered" by federal laws and regulations, the tribal code, or "the traditional customs and usages of the Tribes" shall be decided according to Oregon law. *Ante,* 300 Or at 620.[3] The majority doubts that those "customs and usages"

---

[3]The Code has since been amended to delete the ultimate resort to Oregon law:

"(1) In all civil cases, the Tribal Court shall apply applicable laws of the United States, regulations of the Interior Department and written laws or ordinances of the Confederated Tribes.

"(2) Where necessary, the Court shall apply the laws of traditional custom and usage as is generally accepted by the Tribes. Where there is doubt as to custom or traditional laws, the Court shall obtain the advice of at least two impartial tribal elders who are familiar with the custom and usages.

"(3) The laws of any state are not binding upon the Tribal Court, but may be used as guidelines for establishment of a tribal common law." Tribal Law and Order Code § 201.015 (1982).

cover this case because WSFP did not supply the "necessary information" for the circuit court or this court to take judicial notice of them. *Id* at 621.

As EBI did not even present its tribal code argument to the circuit court, and offered nothing to counter WSFP's claim that Warm Springs would follow common law principles, I would not fault WSFP for failing to supply the information at that stage. In oral argument before this court, WSFP's lawyer asserted that "traditional customs and usages" in this context amounted to common law contract principles. EBI offered nothing to the contrary.

If this case is to be resolved based on what one or the other party failed to offer in support of its position, I would resolve it against EBI, which moved to dismiss the complaint but failed even to try to refute WSFP's claim that "traditional customs and usages" would allow enforcement of rebate agreements. If WSFP failed "to *specify* any developed body of contract law," to support its claim, *ante,* 300 Or at 622 (emphasis added), that was only because EBI conceded that common law contract principles would make the rebate agreement enforceable absent the contrary statute. I would also treat EBI's silence on the meaning of "customs and usages" as a concession that the phrase means what WSFP asserts it means.

We do not ordinarily resolve legal issues, on which our opinion might serve as precedent, based on what one party or the other has conceded. However, when we are determining whether a motion should be granted, the moving party's failure to give any reason why the other party's plausible interpretation of critical language might be wrong is reason enough to deny the motion. I would reverse the granting of EBI's motions because EBI has not indicated why WSFP cannot possibly recover under Warm Springs law.

Even if EBI had no burden of going forward with legal argument to support its motions, I would hold that the motions should not have been granted.

At common law, courts treated questions of foreign law like questions of "fact" and required the party relying on that law to prove it like any other "fact," because it was less

accessible to judges than was domestic law. E. Cleary, *McCormick on Evidence* 938, § 335 (3d ed 1984); L. Kirkpatrick, *Oregon Evidence* 50 (1982). If that approach were still in force, the uncertainty concerning Warm Springs law would be a disputed question of fact. Although WSFP ultimately would bear the burden of "proving" Warm Springs law at trial, this court could not resolve that fact dispute on these motions, and would have to remand to the trial court for a finding.

The Oregon Evidence Code, however, now provides for categories of "law judicially noticed." OEC 202. The leading commentator on our evidence code maintains that:

> "The trend has been steadily away from requiring law to be pleaded and proven to the jury as an issue of fact. Judicial notice of law is the term used to indicate that these requirements will not be imposed. Thus, the primary significance of Rule 202 is to eliminate for the laws listed therein any requirement of pleading or proof to the jury. The determination of the listed laws is exclusively for the court." Kirkpatrick, *supra,* at 50.

The text of the rule supports Kirkpatrick's view that despite the rule's use of the term "judicial notice," questions about the matters referred to in OEC 202 are to be treated as legal ones for the court. For example, there is no reason to regard disputes over "[t]he decisional, constitutional and public statutory law of Oregon," OEC 202(1), as questions of fact.

The laws of Indian nations should be included within these formerly factual matters which are now subject to judicial notice, even though they are not specifically mentioned. They could be encompassed in "law of * * * foreign nations," OEC 202(6), unless the legislature had in mind the decision in *Cherokee Nation v. Georgia,* 30 US (5 Peters) 1, 17, 8 L Ed 1 (1831) (Indian nations are not "foreign" but "domestic dependent" nations), when it enacted the OEC. Moreover, Kirkpatrick argues persuasively that

> "Rule 202 should be interpreted as listing only those laws for which judicial notice is *mandatory* if the court is furnished with the necessary information. Because of the difficulty of proving law to a jury, the court in an appropriate case should take judicial notice of other laws as well." Kirkpatrick at 50 (emphasis added).

I conclude that Warm Springs law ought to be subject

to judicial notice by the trial courts or by this court. *See* OEC 101(1) (OEC applies to all Oregon courts except small claims courts); OEC 201(c), (d) (court "may" take judicial notice whether requested to or not, and "shall" take judicial notice if a party so requests and supplies necessary information). The question of which court should take that notice, and based upon what information, is one of judicial policy. Here, the determination of Warm Springs law requires an interpretation of the "traditional customs and usages" of the tribes, and if there arises any doubt about these, a court should request the advice of at least two "impartial counsellors." Because it may ultimately require something that at least closely resembles the taking of witness testimony, I believe that this is an inquiry more suited to the usual tasks and resources of trial courts than to the resources of this court. Even undertaking that inquiry ourselves, however, would be preferable to affirming the dismissal of a complaint on grounds that the non-moving party, who did offer an explanation of "customs and usages," has not rebutted the moving party's silence on that issue.

Nothing in WSFP's arguments or in the approach I would take "postulates that there is some difference between common law and statutory law that makes one but not the other applicable to transactions with Indians." *Ante,* 300 Or at 622. If "traditional customs and usages" do indeed provide the basis for a "law of insurance contracts without [the Oregon statutory] prohibition," *Id.,* there is no occasion for Warm Springs to turn to either statutes or caselaw "of the State of Oregon." *See ante,* 300 Or at 620-21. If customs and usages offer no answer, Oregon law would apply whether it originated from judicial decisions or from acts of the legislature. Whether or not the hypothetical transactions of which the majority speaks, *ante,* 300 Or at 622, would be governed by Oregon commercial, trade practices, or products liability statutes would depend on whether the tribe has "customs and usages" that allow it to resolve such disputes without turning to Oregon law. If there exist no such "customs and usages," Oregon statutes and court decisions would have the same effect as in a case decided under Oregon law. *But see* n 3, *supra.*

Until we are better-informed about "traditional customs and usages" of the Confederated Tribes, I would not

speculate about how the tribes "believe that they would be best served," *ante,* 300 Or at 623, in their deliberations about whether to conform their commercial law to Oregon's. The majority's views about how the tribe should decide that question of public policy are particularly regrettable because they are unnecessary. If the majority is convinced that WSFP consented to have Oregon law apply, there is no need to consider what Warm Springs law is, let alone what (in the opinion of this court developed without any evidence on the issue) it ought to be.

Because the written contract did not establish as a matter of law that Oregon law had to apply, and because "traditional customs and usages" under Warm Springs law may make the rebate agreement enforceable, I believe there was no basis for granting the motions to strike and to dismiss. Therefore, I respectfully dissent and would reverse the circuit court and the Court of Appeals.