Argued and submitted November 10, 1994, affirmed January 4, 1995

In the Matter of Heather Susanne Hunter
and Lindsey Kristine Hunter.

Cynthia NELSON
and Kevin Nelson,
*Respondents,*

*v.*

Marlin HUNTER
and Tuolumne Band of Me-Wuk Indians,
*Appellants.*

(93-10-295DO; CA A83507)

888 P2d 124

Daniel L. Cronin argued the cause and filed the briefs for appellant Marlin Hunter.

Barbara L. Creel argued the cause and filed the brief for appellant Tuolumne Band of Me-Wuk Indians.

David B. Hydes argued the cause and filed the brief for respondents.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Marlin Hunter (Hunter) and the Tuolumne Band of Me-Wuk Indians (Tribe) seek reversal of the trial court's judgment granting Kevin Nelson's adoption of Hunter's two daughters, thereby terminating Hunter's parental rights. The trial court held that the Indian Child Welfare Act of 1978 (ICWA), 25 USC § 1901 *et seq*, did not apply because Hunter was not a member of the Tribe at the time of the adoption. On *de novo* review, ORS 19.125(3), we affirm.

Cynthia Nelson (mother) and Hunter had two children, born in 1981 and 1983. Mother and Hunter were married in 1986, and divorced in 1990. Mother married Nelson in March 1993, and mother and Nelson petitioned for Nelson's adoption of the children, without Hunter's consent,[1] in August 1993. Because Hunter has approximately 38 percent Me-Wuk blood, and Hunter's mother and grandmother are enrolled members of the Tribe, the Tribe intervened in the adoption proceeding and, with Hunter, argued that the ICWA barred termination of Hunter's parental rights. In particular, Hunter and the Tribe (defendants) argued that the children were "Indian children" within the meaning of the ICWA. The trial court rejected that argument and granted the adoption.

The ICWA narrowly circumscribes the conditions under which "Indian children" can be adopted. *E.g.*, 25 USC § 1912(f).[2] Under the ICWA, "Indian child" means:

---

[1] ORS 109.322 provides, in part:

"If either parent * * * is imprisoned in a state or federal prison under a sentence for a term of not less than three years and has actually served three years, there shall be served upon such parent, if the parent has not consented in writing to the adoption, a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. * * * Upon hearing being had, if the court finds that the welfare of the child will be best promoted through the adoption of the child, the consent of the * * * imprisoned parent is not required, and the court shall have authority to proceed regardless of the objection of such parent."

Hunter had been imprisoned for more than three years at the time of the hearing.

[2] 25 USC § 1912(f) provides:

"No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

"any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 USC § 1903(4).

Subsection (a) does not apply, because defendants do not contend that the children, themselves, are members of the Tribe. Consequently, our inquiry focuses on subsection (b). That inquiry is further narrowed because it is undisputed that the children are eligible for tribal membership.[3] Thus, the issue reduces to whether the children are children of "a member of an Indian tribe" — *i.e.*, whether Hunter was a "member" of the Tribe.

The trial court found that Hunter was not a member of the Tribe, because he was not an "enrolled" member. Defendants do not dispute on appeal that he was not enrolled; they do, however, argue that the trial court erred in treating enrollment as the sole test of tribal membership for purposes of the ICWA.

■ We agree that, under the ICWA, enrollment is not a necessary condition of tribal membership. Although membership may be established through proof of enrollment, enrollment is not the exclusive test of membership. As the Bureau of Indian Affairs guidelines provide:

"Enrollment is not always required in order to be a member of a tribe. Some tribes do not have written rolls. Others have rolls that list only persons that were members as of a certain date. Enrollment is a common evidentiary means of establishing Indian status, but it is not the only means nor is it necessarily determinative." 44 Fed Reg 67586 (1979).

*Accord In re Junious M.*, 144 Cal App 3d 786, 791, 193 Cal Rptr 40 (1983).[4] Nonetheless, the trial court did not err in determining the tribal membership issue as that issue was framed at trial. All parties below apparently proceeded on the assumption that enrollment or the lack thereof, was dispositive, and the court ruled accordingly.

---

[3] At the hearing, the Tribe's representative testified that the children's membership had been approved for "documentation purposes."

[4] We note, parenthetically, that Congress considered and rejected proposed language which would have restricted the application of the ICWA protections to only enrolled members of an Indian tribe. 6 US Code Cong & Adm News 7530, 7538-39, 7558-63 (1978).

■      On appeal, however, defendants assert, for the first time, an alternative basis for tribal membership. They argue that, notwithstanding his non-enrollment, Hunter is a member by virtue of an amendment to the Tribe's constitution and bylaws, particularly subsection (b), which defines "membership":

"The membership of the Tuolumne Band of Me-Wuk Indians shall consist of—

"(a)   All persons of Indian blood whose names appear on the Official Voter's List of the band as of April 1, 1935 and the listed children thereof under twenty-one (21) years of age at that time.

"(b)   Any persons of at least one-fourth (1/4) degree Indian blood who is a lineal descendant of any person listed under (a) above.

"(c)   All other persons enrolled under the provisions of a duly enacted adoption enrollment ordinance."

Defendants acknowledge that they did not make this argument, but urge us to take judicial notice of the amendment pursuant to OEC 201(f) and OEC 202(1) and (6)[5] and to determine the membership issue on that basis.

We assume, without deciding, that, because defendants expressly raised the issue of tribal membership below, their argument concerning the application of the amendment is properly before us. *See State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988). We also assume, without deciding, that the amendment to the Tribe's constitution and by-laws is the sort of tribal law that is judicially noticeable. *See Warm Springs Forest Products Ind. v. EBI Co.*, 300 Or 617, 621, 716 P2d 740 (1986).[6] Nevertheless, defendants amendment-based argument fails for lack of proof.

---

[5] OEC 201(f) provides:

"Judicial notice may be taken at any stage of the proceeding."

OEC 202 provides:

"Law judicially noticed is defined as:

"(1)   The decisional, constitutional and public statutory law of Oregon, the United States and any state, territory or other jurisdiction of the United States.

"* * * * *

"(6)   The law of an organization of nations and of foreign nations and public entities in foreign nations."

[6] *See also Thompson v. Telephone & Data System, Inc.*, 132 Or App 103, 106, 888 P2d 16 (1994) (addressing limitations on judicial notice by courts pursuant to

To prevail on their argument under subsection (b), defendants must establish that: (1) Hunter is a person of at least one-quarter degree Indian blood; and (2) Hunter is a lineal descendant of a person described in subsection (a). Subsection (a), in turn, is limited to "persons of Indian blood whose names appear on the Official Voter's List of the band as of April 1, 1935 and the listed children thereof under twenty-one (21) years of age at that time." Because it is undisputed that Hunter is of approximately 38 percent Me-Wuk blood, the first condition is satisfied. There is, however, no proof in this record establishing the second condition.

Defendants presented evidence that Hunter's mother is of approximately 75 percent Me-Wuk blood and that both Hunter's mother and grandmother are enrolled members of the tribe. However, there was no evidence that their names appeared on the "Official Voter's List of the band as of April 1, 1935" or that either was a listed child, under the age of 21, at that time. Nor was there any proof that "enrollment" in these circumstances somehow corresponded to the 1935 voter's list. Accordingly, defendants failed to prove Hunter's tribal membership.

Affirmed.

---

OEC 201(f). *Cf. Quinn v. Walters*, 320 Or 233, 242, 881 P2d 795 (1994) (affidavit of Registrar of Cherokee Nation attesting to tribal membership for ICWA purposes was inadmissible hearsay).